STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
BARBARA SUTTON, DEFENDANT-APPELLANT.

Argued January 23, 1979—Decided May 24, 1979.

111

Mr. *Thomas A. Pavics,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Morton L. Anekstein,* Assistant Deputy Public Defender, on the brief).

Mr. *Larry R. Etzweiler,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

PASHMAN, J. This case constitutes the third and final controversy presented to us today involving the propriety of a prosecutor's refusal to sanction a defendant's admission into a county Pretrial Intervention Program (PTI), see *R.* 3:28. As in *State v. Bender,* 80 *N. J.* 84 (1979) and *State v. Maddocks,* 80 *N. J.* 98 (1979), we are here called upon to determine whether defendant has "clearly and convincingly" established that the prosecutor's rejection of her PTI application was based upon "a patent and gross abuse of his

discretion." *State v. Leonardis,* 73 *N. J.* 360, 382 (1977) (*Leonardis II*).

Defendant is the mother of two children, aged 9 and 11. Her husband having abandoned the family household at some point in 1972, defendant applied for and was granted public assistance from the Somerset County Welfare Board in the amount of $310 per month. Aside from the events to be described below, she has never been arrested or charged with the violation of any law.

On July 27, 1977, the Welfare Board filed a complaint in the Somerville Municipal Court alleging that defendant had unlawfully received $6,292 in public assistance funds and $1,528 in food stamps over a four and one-half year period. These charges stemmed from the fact that, as a recipient of welfare assistance, defendant had submitted a signed statement to the Board in which she promised to report any changes in her current income. The Board contended that from September 1972 until April 1977, defendant was paid approximately $50 per week as a part-time school bus driver, and that contrary to *N. J. S. A.* 2A:111–2 she deliberately failed to disclose these outside earnings to the Board. Had she done so, her welfare allotments would have been reduced.

On July 29, 1977, defendant applied for admission to the Somerset County Pretrial Intervention Program. Having reviewed defendant's application, the program coordinator, on September 9, 1977, recommended that defendant not be enrolled. The prosecutor concurred in this conclusion, and by letter dated September 15, 1977 notified defendant that the State would not consent to her admission. The reason underlying the prosecutor's rejection was cursorily stated as:

New Jersey Supreme Court Guideline # 3(i)(2) . . . part of a continuing criminal business or enterprise.

In accordance with Guideline 3(i), defendant then submitted additional materials in order to demonstrate her eligibility for PTI. Although admitting that she had failed

to disclose her outside income to the Board, defendant disputed the amount which the State claimed she had illegally obtained. Instead of the $7,820 of excess payments asserted by the Board, she claimed that she had at most received $2,800 in additional public assistance. She also pointed to the "minimal" nature of the sums she had earned in outside employment ($50 per week) and emphasized that her conduct had been precipitated by her desire to adequately feed and clothe her two minor children. Finally, defendant contended that her crime did not constitute a "continuing criminal business or enterprise" within the intendment of Guideline 3(i)(2) and noted her belief that others who had been charged with similar offenses had been granted PTI admission.

By letter dated October 14, 1977, defendant was informed that the decision to reject her application would "not be reversed." Defendant therefore moved in the Superior Court that she be admitted to PTI over the objections of the prosecutor and program coordinator.

At the hearing which ensued, the prosecutor did not attempt to dispute defendant's contention that only $2,800, as opposed to $7,820, had been illegally received. Rather, he emphasized that defendant's unlawful conduct had taken place over a four and one-half year period, and that this fact alone constituted adequate justification for the State's refusal to divert her into PTI.

After reviewing the submitted materials, the trial judge ruled that the prosecutor's decision amounted to a patent and gross abuse of discretion, and this despite his acknowledgement that the crime involved was "serious" in nature. Two reasons underlay his determination. First, the judge took "judicial notice" of the number of PTI applications which he had approved.

which [had] been recommended by the director and, presumably, [had] not been objected to by the Prosecutor's Office, where a person [was] charged with the same offense [as was defendant] in the same factual situation."

Indeed, the judge remarked that he had "signed four [such applications that] week alone." In his view, the prosecutor's failure to explain "this apparent inconsistent treatment," as well as the fact that defendant had no prior involvement with the law, compelled him to find that a gross and patent abuse of discretion had occurred. Accordingly, he entered an order admitting defendant to the Somerset County PTI program.

In an unpublished *per curiam* opinion dated September 26, 1978, the Appellate Division reversed the trial court's decision. Noting that defendant's illegal receipt of welfare funds was over four years in duration, the appellate judges concluded that the crime could "arguably" be characterized as a "continuing criminal business or enterprise," and hence an offense which under Guideline 3(i)(2) should "generally" result in rejection from PTI. Consequently, the court found that the prosecutor's refusal to sanction admission did not constitute a patent and gross abuse of discretion. We granted defendant's motion for leave to appeal.

I

Our inquiry into the validity of the prosecutor's determination must begin with an examination of the factors upon which it was premised. *See, e. g., State v. Bender, supra,* 80 *N. J.* at 84; *State v. Maddocks, supra,* 80 *N. J.* at 98. The notice of rejection sent to defendant indicates that only one reason underlay the decision in the present case:

New Jersey Supreme Court Guideline # 3(i)(2) . . . part of a continuing criminal business or enterprise.

Preliminarily, we feel compelled to comment upon the adequacy of this "statement of reasons." In *State v. Leonardis,* 71 *N. J.* 85 (1976) .*(Leonardis I),* we noted that a prosecutor's disclosure of the basis of his PTI decisions furthers many important goals. A statement of reasons both facilitates judicial review of the prosecutorial determination

and allows a defendant a meaningful opportunity to rebut the premise upon which that determination is based. 71 *N. J.* at 114–115; *see, e. g., State v. Maddocks, supra,* 80 *N. J.* at 98. Further, such disclosures provide a "valuable source of information" through which the efficacy of PTI programs can be evaluated and, by "alleviat[ing] * * * suspicions about the arbitrariness of given decisions," foster respect for the law among the public at large. 71 *N. J.* at 115.

■■ Measured against these standards, there can be no question but that the "statement of reasons" provided in the present case was deficient. A purported "statement of reasons" which, as here, does no more than parrot in purely conclusory terms the language of the Guidelines is no statement at all. *See State v. Atley,* 157 *N. J. Super.* 157, 164 (App. Div. 1978). This is not to suggest that a prosecutor must provide a defendant with a detailed report outlining every step taken en route to his decision. At the least, however, he should note the factors present in defendant's background or the offense purportedly committed which led him to conclude that admission should be denied. *See* Guideline 8.

Our independent review of the record, however, satisfies us that this defendant was fully apprised that the primary basis of the prosecutor's decision was that her conduct spanned a prolonged period of time, and that she was prepared to rebut this premise at the hearing below. Consequently, we shall address the merits of the present controversy.

## II

■ In *State v. Bender,* we held, *inter alia,* that in order for a series of acts to constitute a continuing criminal business or enterprise

defendant's course of conduct must ordinarily involve commercial overtones. That is, the crimes perpetrated must be undertaken for the purpose of enriching defendant in some material way.

[80 *N. J.* at 95]

*See, e. g., State v. Barrett,* 157 *N. J. Super.* 96, 102 (App. Div. 1978) ; *State v. Markt,* 156 *N. J. Super.* 486, 490 (App. Div. 1978) ; *State v. Masucci,* 156 *N. J. Super.* 272, 280 (Law Div. 1978). The conduct here engaged in by defendant fully satisfies this test.

Defendant did not merely fail to report one or a few sporadic accessions to her income. Rather, over a four and one half year period, she regularly received compensation deriving from her employment as a part-time school bus driver. She was thus guilty of a series of "fail[ures] to disclose a material fact which it [was her] duty to reveal," and these non-disclosures allowed her to "obtain * * * from [an] agency of the county * * * money, property, [and] other thing[s] of value * * *." *N. J. S. A.* 2A:111–2.

The prosecutor thus properly characterized defendant's crime as falling within the ambit of Guideline 3(i)(2) and thus "generally" to result in rejection from PTI. We are cognizant that defendant's misconduct was precipitated in large part by her desire to adequately feed and clothe her children, and that she has never had any other confrontations with the law. However, as noted in *State v. Bender, supra,* in the absence of evidence clearly demonstrating the contrary, we must presume that the prosecutor took these factors into account before arriving at his decision. *See* 80 *N. J.* at 93. Notwithstanding our sympathy for defendant's plight, were this defendant's only assignment of prosecutorial error, we would be constrained to hold that the decision to reject defendant was not so arbitrary as to constitute a patent and gross abuse of discretion.

■ At the hearing below, however, the trial judge's finding of prosecutorial arbitrariness was premised primarily upon another ground — that the prosecutor had failed to accord equal treatment to similarly situated individuals. In *State v. Bender, supra,* we noted that ordinarily an abuse of discretion will be manifest if a prosecutorial veto

(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.

[80 *N. J.* at 93]

*See State v. Maddocks, supra,* 80 *N. J.* at 98. Aside from its equal protection overtones, *see* discussion *infra* at 121–122, an applicant's assertion that he has been accorded less favorable treatment than identically situated individuals in essence amounts to a claim that the veto of his admission was "based upon a consideration of irrelevant or inappropriate factors." Should a defendant clearly demonstrate that such was the case, he will have succeeded in showing that an abuse of discretion was manifest.

▉ We must emphasize that in order for a defendant to prevail on such a theory, he will truly be required to carry a heavy burden. As *Leonardis II* makes clear, prosecutorial decisions in PTI matters are primarily individualistic in nature. In making any determination, the prosecutor must assess a particular applicant's "amenability to correction" and potential "responsiveness to rehabilitation" — assessments which are dependent upon such factors as a defendant's age, past criminal record, education, family ties, standing in the community, and employment performance. Also relevant are "subjective" evaluations, such as the prosecutor's assessment of a particular defendant's sincerity, the motive underlying the commission of the crime, and the degree of local public anxiety attaching to certain forms of misconduct. Different results may therefore be reached in superficially similar cases. *See, e. g., State v. Litton,* 155 *N. J. Super.* 207, 215 (App. Div. 1977); *State v. Forbes,* 153 *N. J. Super.* 336, 340–341 (Law Div. 1977).

▉ Ordinarily, therefore, a defendant will not prevail merely because he can demonstrate that, unlike himself, others who have been charged with similar offenses have been diverted into PTI. Rather, he is required to demonstrate through independent evidence that the prosecutor's refusal

to sanction his admission was in fact premised upon the consideration of an irrelevant or inappropriate factor.

In the present case, however, the prosecutor's rejection of defendant's application was based wholly upon the nature of the offense with which defendant was charged. Neither the statement of reasons provided to defendant nor the record of the hearing below shows that "individualistic" factors played any role in his decision. Consequently, we are of the opinion that should defendant be able to demonstrate that others charged with identical offenses have been granted PTI enrollment, the prosecutor may appropriately be called upon to articulate some rational basis which led him to differentiate defendant from those other individuals. Such bases might include, for example, the amount of money which this particular defendant illegally received, or the prosecutor's decision to alter his policy of diversion with respect to this type of crime in light of its increased frequency or changed societal attitudes.

We are not now in a position to pass upon the merits of defendant's claim in this regard. The prosecutor was not put on notice that defendant would advance this contention until the hearing below was actually in progress. Indeed, defendant did not even produce any evidence on this point. Rather, it was the trial judge who *sua sponte* remarked that defendant may have been treated less favorably than similarly situated PTI applicants. Hence, the proper course is for us to remand this case to the trial judge so that both defendant and the prosecutor may fully present their views thus enabling the judge to pass, in the first instance, upon their respective contentions.

Several points, however, must be noted. Our holding today should not be read as granting PTI applicants a license to subpoena prosecutorial files or interrogate prosecutors under oath in order to substantiate assertions that they have been accorded less favorable treatment than other similarly situated individuals. *See, e. g., State v. Forbes, supra.* Rather, as previously noted, a defendant's claim that an irrelevant fac-

tor was considered in the decision-making process must be proven through resort to independently secured evidence.

Second, we note that the trial judge in the present case acted well within his discretion in *sua sponte* taking judicial notice of the facts involved in other PTI cases that had been brought before him for approval. *See Evid. R.* 9(2)(b). We have long held that judicial intervention in the course of a court proceeding is permissible where such intervention is necessary to preserve the integrity of that hearing. *See, e. g., State v. Ray,* 43 *N. J.* 19, 25 (1964); *State v. Riley,* 28 *N. J.* 188, 200–201 (1958), app. dismissed 359 *U. S.* 313, 79 *S. Ct.* 891, 3 *L. Ed.* 2d 832 (1959), *cert.* den., 361 *U. S.* 879, 80 *S. Ct.* 166, 4 *L. Ed.* 2d 117 (1959), *Ridgewood v. Sreel Investment Corp.,* 28 *N. J.* 121, 131–132 (1958). A judge is not required to sit idly by if he believes that a litigant is being unfairly deprived of his rights. Such intervention, however, requires a proper exercise of judicial notice under the rules so that the prosecutor is alerted and is afforded an opportunity to respond.

## III

Defendant also claims that the prosecutor's more favorable treatment of similarly situated PTI applicants has deprived her of her Fourteenth Amendment right to equal protection of the laws. In light of our extensive discussion in Part II of this opinion, this contention can be disposed of briefly.

It is well settled that a prosecutor's conscious exercise of some selectivity in the enforcement of criminal laws does not in itself constitute a federal constitutional violation. Rather, in order for a defendant to prevail on an equal protection challenge, he must demonstrate that the decision to prosecute him and not others was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bordenkircher v. Hayes,* 434 *U. S.* 357, 364, 98 *S. Ct.* 663, 54 *L. Ed.* 2d 604, 611 (1978); *see, e. g., Oyler v. Boles,* 368 *U. S.* 448, 456, 82 *S. Ct.* 501, 7 *L. Ed.*

2d 446, 453 (1962); *Yick Wo. v. Hopkins,* 118 *U. S.* 356, 6 *S. Ct.* 1064, 30 *L. Ed.* 220 (1886).

Thus, in order to prevail on an equal protection challenge, defendant will have to demonstrate that the prosecutor's refusal to divert her, while admitting others who were similarly situated, was based upon an "arbitrary classification" — *i. e.,* one which bears no relevance to the goals underlying PTI. Such a showing is identical to that which plaintiff must make if she is to prevail on the theory enunciated in Part II of our opinion. Consequently, there is no need to further elaborate upon the burden of proof which she must satisfy.

Accordingly, the judgment of the Appellate Division is reversed and this case remanded to the trial court for proceedings consistent with our opinion.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, JACOBS, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.