208 N.J. Super. 118 (1985)
504 A.2d 1241
STATE OF NEW JERSEY, PLAINTIFF,
v.
THOMAS P. RIDGWAY, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Burlington County.
Decided October 31, 1985.
*120 Rocco Minervino, for plaintiff (Stephen Raymond, Burlington County Prosecutor, attorney).
William R. Barbour, for defendant (Barbour & Costa, attorneys).
HAINES, A.J.S.C.
Thomas P. Ridgway has been indicted under N.J.S.A. 2C:11-5, the death by auto statute. His application for admission to the pretrial intervention program (PTI) has been denied. That denial, having been appealed, is addressed by this opinion. It holds that the denial was arbitrary, amounting to a patent and gross abuse of discretion, requiring reversal.
Ridgway is 19-years old, the divorced father of one child. He is gainfully employed as an "on-demand" painter with no physical, psychological or drug addiction problems and no criminal record. The accident did not involve alcohol or other drugs.
This is defendant's second PTI appeal. His application was first rejected by the PTI director for the following reasons:
1. His conduct caused the death of a 16-year old boy.
2. He had been involved in "8 accidents in the past."
3. He pled "not guilty" to the charge, claiming that the brakes on the trash truck he was driving had failed. Examination of the truck after the accident, however, did not reveal any defective brakes.
4. The family of the decedent and the complainant were opposed to PTI admission.

*121 5. The need to prosecute outweiutweighs the benefit of diversion.
6. The destruction of innocent lives on the highway, due to careless or reckless operation of motor vehicles, must be deterred.
The prosecutor took the same position as the director for the following reasons:
1. This was not a "victimless" crime.
2. Contrary to the defendant's claim, the brakes on his truck, as disclosed by an inspection after the accident, were in working order. There was no claim by defendant that he used his horn to warn the victim although one horn on the truck was operable.
3. His driving abstract shows that the offense "constitutes part of a continuing pattern of anti-social behavior, especially in view of his prior convictions for failure to observe a traffic control device and disregarding a stop sign."
4. There is a public need to enforce the motor vehicle laws.
5. The need for prosecution far outweighs any benefit flowing from diversion.
6. Family and complainant are opposed to a PTI admission.
7. On balance, the nature of the offense outweighs any interest in rehabilitating the defendant.
The rejection was appealed. The appellate record revealed the failure of the director and the prosecutor (sometimes referred to collectively as "the State") to consider defendant as an individual; his background, character, and prospects, except for his motor vehicle record, were barely mentioned. Consideration of the individual is a central requirement of the PTI program. State v. Sutton, 80 N.J. 110, 119 (1979). While the prosecutor referred to rehabilitation, a PTI goal, he did so only in conclusory terms. Defendant's motor vehicle record, a central theme supporting the rejection, had not been analyzed by either the director or the prosecutor. In fact, it did not appear to be a record upon which the denial of a PTI application could be based. The State's decision was therefore reached after consideration of an apparently irrelevant factor and without consideration of required factors. It was a manifest abuse of discretion, State v. Bender, 80 N.J. 84 (1979), requiring a remand with direction for a reexamination of the application.
Three days after execution of the order remanding the matter, the director informed defense counsel that he would not *122 approve the PTI application. At that time, defendant requested the director to read a newspaper article dealing with safety problems at the intersection where the accident occurred. He declined because he believed that his reconsideration was confined to the record before him at the time of his original determination. He also declined an offer of defendant and counsel to appear before him to answer questions about the driving abstract, limiting them to written comments. In the course of doing so, the director said:
Judge Haines didn't understand one word of what I said. The denial stands. I am going to give you a letter expanding the reasons, if that's what he wants, but the denial stands.
The director explained this comment, acceptably, as intending no offense to the court.
The director then rejected the application again. He based the rejection upon a consideration of all PTI statutory criteria and R. 3:28 Guidelines ("GL"). His reasons (paraphrased) for denying the application were:
1. The nature of the offense, including the factual background, does not favor admission.
2. The family of the complainant is opposed.
3. Since the defendant denies having any personal problems, there are no PTI services to offer him.
4. If driver training is indicated, it is a matter for the Motor Vehicle Department which is not subject to a PTI order.
5. The interest of the victim and society in prosecution outweighs the interest of the defendant in admission. Deterrence is in the interest of society and is to be obtained through prosecution.
6. There is no social problem to be exacerbated by prosecution.
7. The need to prosecute outweighs the need for admission.
8. The harm to society, if prosecution is abandoned, outweighs any benefit to society which diversion could provide.
9. "... there is no need to rehabilitate, because you tell us this was an accident caused by mechanical failure and nothing more."
10. This is not a victimless crime.
He made the following favorable findings:
1. There is no record of antisocial behavior.
2. The driving record is satisfactory.

*123 3. Defendant's actions were not assaultive in the sense that the term is normally used.
4. There is no history of violence.
5. No organized crime is involved.
The prosecutor again supported the denial of admission, incorporating his prior reasons, but agreeing that defendant's driving record is not a basis for denial. He added:
1. Defendant claims he is not guilty and therefore does not recognize his responsibility. PTI would be ineffective.
2. Driver training would not be appropriate.
The prosecutor considered the newspaper article rejected by the director but "discounted" it. He noted the following favorable factors:
1. There is no evidence of alcohol or drug abuse.
2. The defendant has no record.

The State's Reasons or Lack of Reasons.
Thomas P. Ridgway appears to be an ideal candidate for PTI admission. He is young. He has family responsibilities. He is employed. He has no criminal record. He has no psychological problems and is not involved with drugs. His accident did not involve alcohol or any other drug. These circumstances invite a careful appraisal of defendant as an individual and an equally careful articulation of reasons for the rejection of his application.
Consideration of the individual is a necessity with respect to the PTI program. In State v. Sutton, supra, the Court said:
Prosecutorial decisions and PTI matters are primarily individualistic in nature. In making any determination, the Prosecutor must assess a particular applicant's "amenability" and potential "responsiveness to rehabilitation"  assessments which are dependent upon such factors as a defendant's age, past criminal record, education, family ties, standing in the community, and employment performance. Also relevant are "subjective" evaluations, such as the Prosecutor's assessment of a particular defendant's sincerity, the motive underlying the commission of the crime, and the degree of local public anxiety attaching to certain forms of misconduct. [80 N.J. at 109]
*124 The necessity for that consideration has been underlined in other cases. In State v. Maguire, 168 N.J. Super. 109 (App.Div. 1979), the court said:
It is obvious that the Prosecutor, in writing the letters of December 1, 1977, failed to deal with defendants on a prompt and individual basis. The fact that the defendants were involved in a single night of wrongful conduct does not justify grouping them as he did. We are dealing with young persons whose futures hang in the balance and whose applications for diversion mandate prompt individualized study and consideration. [at 116]
In State v. Lamphere, 159 N.J. Super. 562 (App.Div. 1978), the court said:
The emphasis ... is on the individual offender and his potential for rehabilitation, rather than the offense or the offender's status. Neither these opinions nor the Guidelines authorize a priori exclusion of an offender from the program without a judgmental consideration of the individual and the offense. [at 565]
These individual criteria were ignored by both prosecutor and director in the present case.
The matter has been remanded once because there was no consideration of the individual. Once is enough. There has been no negative assessment of defendant as an individual, and the facts would not warrant such an assessment. It must be assumed, therefore, that his individual characteristics support admission. The significance of this assumption cannot be overlooked.
It is also the obligation of the State to provide written reasons for the rejection of defendant's application. Thus, in State v. Atley, 157 N.J. Super. 157 (App.Div. 1978), the court said:
It is, of course, elementary that no matter how great a deference the court is obliged to accord the administrative determination which it is being called upon to review, it has no capacity to review at all unless there is some kind of reasonable factual record developed by the administrative agency and the agency has stated its reasons grounded in that record for its action. [at 163]
....
The point, of course, is that a purported statement of reasons which, as here, does no more than parrot, in truly conclusionary terms, the language of the Guidelines is not statement at all. Defendant is not entitled as a right to admission to the program. He is, however, entitled to full and careful consideration of his application and to the assurance, which can only be provided by the *125 statement of the reasons for rejection, that his application has nevertheless received such consideration. The perfunctory, conclusionary form letter here fails to meet that standard. We, therefore, concur with the conclusion of the trial judge that there was no way of telling, from this record, whether defendant's application was, in fact, fully and carefully considered. [at 164]
In the present case, the reasons given are insufficient. They are either conclusory or too vague to support the prosecutorial position. As a consequence, that position is arbitrary.
It is to be recognized that the PTI standards to be applied by the director and the prosecutor are not precise. This is a circumstance dictated by the subject matter which the statute and Guidelines address. They deal with human behavior: motivation, desire, character traits, probabilities of controlling criminal behavior, needs of victims and society, exacerbation of social problems as a result of prosecution and the balancing of supervisory treatment against the public need for prosecution. Society normally leaves such standards to the consideration of social science experts and philosophers. This is not to suggest that they are inappropriate or unenforceable, only that difficulties are to be expected when they are applied in a setting which provides scant facts and little time for mature reflection. Indeed, in the case of the prosecutor, the information is second-hand, limited to facts supplied by the director and the investigation of the crime. He has no access to defendant, personally.
The standards must be applied conscientiously and articulately. The decision to prosecute or not to prosecute turns upon their correct application. It is a decision of vital significance to a person charged with crime. The obligation of the director and the prosecutor, therefore, is to so state their reasons for a PTI denial as to make it clear that they satisfy the standards. That requirement has not been met here.
This conclusion can be demonstrated only by an analysis of the reasons given here. Since nothing in the enabling material distinguishes the weight to be given to the prosecutor's decisions from the weight to be given the director's, and since they agree on the PTI rejection, there is no reason in this case to *126 make any different analysis of their separately stated reasons. Those reasons will be considered as though spoken with a single voice. They are set forth below with the analysis which reflects their inadequacies.
(1) The nature of the offense.

Like all other criteria addressed by the State (used hereinafter to refer to both prosecutor and director), this is a required consideration pursuant to N.J.S.A. 2C:43-12(e); GL3(i). There is some question as to whether the nature of the crime, standing alone, may be sufficient to support the prosecutorial denial. State v. Leonardis, 71 N.J. 85 (1976) said: "Because rehabilitation is dependent on an individual's propensity for correction, conditioning his admission solely on the nature of his crime may be both arbitrary and illogical. Greater emphasis should be placed on the defendant than on the offense." Id. at 102. Later in State v. Leonardis, 73 N.J. 360 (1977), the court said: "... the Prosecutor's refusal to consider or the court's denial of a divergent order may, where appropriate, be based solely on the nature of the offense charged." Id. at 382. See also State v. Bender, supra, 80 N.J. at 89.

GL3(i) answers the question, avoiding the problem of vagueness otherwise infecting the words "the nature of the offense." It cites both Leonardis opinions and recognizes that "there must be a balance struck between a defendant's amenability to correction, responsiveness to rehabilitation and the nature of the offense." The guideline then continues by defining the "nature" of those offenses, which standing alone, may be a basis for denial of a PTI application. They are described as first and second degree crimes and certain drug offenses. The guideline does not refer to death by auto which is a fourth degree offense. N.J.S.A. 2C:11-5 (Now third degree by later statutory amendment). This explains Leonardis II which permits a PTI denial to be based solely upon the nature of the offense "where appropriate." It is appropriate when a first or second degree offense is involved or when certain drug offenses are involved, not otherwise.
This translation solidifies the language of the criteria which would otherwise be illusory. What is the "nature" of an offense? Does it involve the extent of the injury to person or property, the harm to society or the shock to the sensibilities? How are these to be measured? One offense, for example, may be more harmful than another to a particular student of social problems, a particular director, a particular prosecutor or a particular segment of society. Unless the word "nature" is narrowed by the above reading of GL3(i), it cannot be enforced.
In the present case, the State considered the fact that defendant was not charged with a "victimless" crime when he assessed the "nature of the offense." One of the purposes of PTI, and the apparent source of the State's reason, is to permit "the least burdensome form of prosecution possible for defendants charged with `victimless' offenses." N.J.S.A. 2C:43-12; GL 1(c). This purpose is not offered as a definition of "the nature of the offense," and "victimless" is not defined. This court's interpretation of the language of the standard denies the validity of the State's reason. Its "nature of the offense" *127 was not otherwise explained except by a statement that: "The crime we are dealing with here involves the death of a 16-year old boy." These approaches are inadequate even if GL3(i) does not apply. They do not advise defendant as to why the "nature" of his offense prevents his admission to PTI while the "nature" of other offenses (such as welfare fraud, a frequent subject of favorable PTI treatment, though clearly damaging to character and society) does not.
(2) The facts of the case.

Defendant has said that a brake failure caused the accident. The State challenges his veracity by noting that a State police examination found no mechanical problems with either the brake or the air horn, which allegedly was not sounded prior to the accident. This point-counterpoint presents problems. The State is required to consider the facts of the case. It assumes guilt for PTI purposes. It properly relies upon the fact that death resulted from a motor vehicle accident and upon any other uncontradicted facts. It walks on thin ice, however, when it begins to examine factual controversy.
The State here accepts the information provided by a police examination as conclusive. It ignores the fact that defendant may be able to refute the police testimony at trial. His assertions may be proven correct. The nature, adequacy and expert nature of the investigation have not been delineated, and there has been no opportunity for cross-examination. The State may assume guilt when defendant claims innocence; it may not become involved in deciding other factual disputes when considering a PTI admission. Were its obligation otherwise, the State would be obliged to conduct a trial before reaching any PTI conclusion. That is not an approach to be used in a PTI proceeding. Consequently, the State's reliance in the present case upon its version of disputed facts was improper.
(3) The family is opposed to PTI admission.

This is a factor which must be considered. The position of the family, a victim in the true sense of the word, is understandable. Nevertheless, families in these situations naturally take positions based only upon their own losses, their own feelings. They have little access, if any, to facts about defendants. Their opposition is not likely to be based upon PTI considerations. It may be based upon revenge, or upon the very opposite, some undisclosed interest in the welfare of society. It is opposition which is not explained and which defendant cannot meet. It cannot have been intended by the Legislature to be a conclusive consideration.
(4) PTI is inappropriate because defendant does not have any personal problems.

One of the purposes of PTI is "[t]o provide defendants with opportunities to avoid ordinary prosecution by receiving early rehabilitative services, when such services can reasonably be expected to deter future criminal behavior by defendant, and when there is an apparent causal connection between the offense charged and the rehabilitative need, without which cause both the alleged offense and the need to prosecute might not have occurred." GL1(a); N.J.S.A. 2C: 43-12a(1). Since Thomas P. Ridgway has not been involved with *128 alcohol or other drugs and has not exhibited any personal problems requiring specific treatment, the State concluded that PTI is not appropriate. The position, if sound, would limit PTI admission to those needing treatment for the purpose of correcting personal problems, such as drug abuse. It would deny admission to those persons without such problems, persons who, logically, are less likely to be involved in future criminal behavior because they have fewer, if any, problems to be resolved. It is hard to believe that the Legislature or the Supreme Court intended this distinction to be made.
Furthermore, the purpose of rehabilitation through treatment is only one of the purposes of PTI. Two others, both appropriate here, are:

To provide an alternative to prosecution for defendants who might be harmed by the imposition of criminal sanctions as presently administered, when such an alternative can be expected to serve as sufficient sanction to deter criminal conduct. [GL1(d)]

To relieve over-burdened criminal calendars in order to focus expenditure of criminal resources on matters involving serious criminality and severe correctional problems. [GL1(e)]
Here there is no showing of any severe correctional problem and, or, any, "serious criminality." It is also a PTI purpose "to deter future criminal or disorderly behavior by a defendant/participant in pretrial intervention." GL 1(e). It is obvious that this purpose is more likely to be served by diverting a defendant who has no personal problems than it is by diverting one who has such problems. Thus, the State has improperly considered one purpose of PTI to the exclusion of three others (out of a total of five purposes), more appropriate for consideration in the present case. In addition, since it failed to consider defendant as an individual, its conclusion that the probationary arrangement always present in a PTI admission will not be helpful to defendant in deterring future conduct or in providing rehabilitation has no basis in fact.
(5) Relationship of the crime to a situation conducive to change through participation in supervisory treatment.

Defendant suggests that supervisory treatment  driver training  may be an appropriate means through which to satisfy this standard. The State takes the position that such training is within the control of the Division of Motor Vehicles. This is not necessarily so. The PTI Program makes creative use of a broad range of treatments and conditions. It requires counseling, restitution, community service and other appropriate responses, sometimes through private resources. There is no reason that it could not require defendant to undertake driving instruction with or without the cooperation of the Division of Motor Vehicles. In fact, there appears to be little reason for Ridgway to undertake driver training. He offers the suggestion for the purpose of countering the State's argument that PTI is not appropriate because it has no services to offer him. The suggestion is unnecessary. The State cannot single out one purpose of PTI to the exclusion of all others.
(6) The needs and interests of the victim and society.

The State's position is that society requires prosecution in order to maintain confidence in the enforcement of our motor vehicle rules, thereby insuring its belief that members of the public will not be endangered by motor vehicle *129 operators who do not obey the law. The State reaches this conclusion, without considering the needs and interests of the victim, perhaps, because the fact of the family's opposition has been addressed.
The State clothes this reason in conclusory terms. Logic certainly insists that enforcement of our motor vehicle laws, criminal and otherwise, is a necessity, if they are to have any validity. But this can be said about every criminal offense. Death by auto is not peculiar in that respect. If this is a valid reason for denying a PTI application, it is one that can be used with every application. The intent of the statutes is to the contrary: "Any defendant charged with crime is eligible for enrollment in a PTI Program...." GL3(i). It is clear that the State has not provided any valid reason showing that the needs of society require prosecution or that the instant offense is to be treated differently than any other.
(7) The need to prosecute outweighs the value of PTI.

The State, in addressing this criterion, merely parrots the rules. It presents no added facts supporting the supposed need to prosecute and none reflecting the value of pretrial intervention to either defendant or society. It is a test which the State has not satisfied.
(8) Whether the harm to society caused by abandoning prosecution outweighs the benefit to society of a PTI admission.

The State takes the position that harm outweighs benefit. It presents no new reasons for reaching this conclusion. Nothing in the record shows what harm will be done to society by abandoning prosecution; nothing shows the benefits which society will reap through the use of diversion. It is a criterion which cannot be considered; it is not supported by reasons.
(9) Failure to admit guilt.

This is not among the statutorily mandated criteria. Refusal to admit guilt may be considered in connection with defendant's potential for rehabilitation, but PTI admission may not be denied on the ground of refusal to admit guilt. State v. Maddocks, 80 N.J. 98, 108 (1979); State v. Smith, 92 N.J. 143 (1983). The State's rejection letters ignore this distinction. The prosecutor's letter, for example, states: "While an admission of guilt is not required by the Guidelines, acceptance of responsibility for his actions in this case is essential. Without recognition of responsibility, the defendant is demonstrating an attitude that renders PTI ineffective." These are conclusory statements. They are based upon the factual dispute concerning mechanical failure. Admission of guilt is not essential to an acceptance of responsibility. One who kills another, as in war or in any other setting, may accept a great deal of responsibility without admitting participation in a criminal happening. Furthermore, the State's position, stripped to its essentials, is that PTI admission may be denied because guilt has been denied. This is contrary to law.

Summary
This analysis leaves the State with only one acceptable reason for rejecting defendant's application: the objection of the victim's *130 family. The reasons supporting admission weigh heavily in the other direction. He is only 19-years of age, has no record, has family responsibilities, is employed and meets three of the five purposes of pretrial intervention, namely:
1. He is a defendant who may be harmed by the imposition of criminal sanctions as presently administered. The PTI alternative can be expected to serve as a sufficient sanction to deter future criminal conduct.
2. Admission will relieve an overburdened criminal calendar, permitting the expenditure of criminal justice resources on matters involving serious criminality and severe correctional problems not present here.
3. Admission will deter future criminal or disorderly behavior by the defendant.
These positive factors were not addressed by the State. It gave no consideration to the individual. Its reasons for rejection are not only inadequate but arbitrary.

Conclusion
A reversal of the State's rejection of defendant's PTI application is permissible only if it is shown to be a patent and gross abuse of discretion. The rule is set forth in State v. Bender, 80 N.J. 84 (1979):
Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon the consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross" it must further be shown that the prosecutorial error complained of will clearly subvert goals of Pretrial Intervention. [at 93]
State v. Maguire, 168 N.J. Super. 109 (App.Div. 1979), noted that the "patent and gross" standard is extremely difficult to define and apply. It construed the term to mean: "When the result reached has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require court intervention." Id. at 115, n. 1.
In the present case, the State failed to consider the individual after two opportunities to do so. This is a significant and elementary failure. Nearly all of the reasons upon which the rejection was based were irrelevant or inappropriate because *131 they were misconceived or were not supported by adequate reasons. The factors favoring admission to the program were given little or no attention. These circumstances, considered together, amount to a clear error in judgment. The prosecutorial veto therefore amounted to a patent and gross abuse of discretion. The rejection is reversed. Defendant is admitted to the PTI program.