291 N.J. Super. 171 (1996)
677 A.2d 211
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL R. IMBRIANI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1996.
Decided June 3, 1996.
*173 Before Judges SHEBELL, STERN and WALLACE.
Donald R. Belsole argued the cause for appellant (Mr. Belsole, attorney; Kevin Weinman, on the brief).
*174 Nancy L. Singer, Assistant Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney; Ms. Singer, of counsel, and on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Defendant, Michael R. Imbriani, a former Superior Court Judge, appeals from the denial of his application to enter the Pretrial Intervention Program (PTI). He argues that: (1) the Program Director's denial was arbitrary and capricious since it was predicated upon defendant's refusal to settle a related civil suit and failed to apply fair and reasonable criteria; and (2) the court erroneously considered sua sponte and found that defendant's conduct was a breach of the public trust. We hold the decision to reject defendant's application was not arbitrary or capricious, and find it unnecessary to address the breach of public trust issue.
On June 16, 1994, defendant was charged in an accusation with a violation of N.J.S.A. 2C:20-9, theft by failure to make required disposition of property received, a third degree offense. The charge related to defendant's, then a sitting judge, misuse of funds of a closely held corporation, Community Medical Arts Building, Inc. (CMAB), in which defendant's wife was a forty percent stockholder. Her shares were transferred to her by the defendant fifteen years earlier. Three other persons, all doctors, held the remaining stock. The corporation operated a medical arts building. Defendant had controlled the operation of CMAB since its inception, thirty years earlier.
In April 1992, the stockholders became aware that the mortgage on the building was near foreclosure. Their investigation revealed that defendant had diverted $113,576.53 in tenant rent and real estate tax checks, between May 1, 1988 and June 6, 1992, to his personal bank accounts. He repaid $13,726.68, leaving a balance of $99,799.85 in diverted rent and tax checks. Defendant also paid personal expenses with CMAB funds in the amount of $26,300.35, *175 and wrote CMAB checks payable to vendors, endorsed the checks in the vendors' names, cashed them, retaining the proceeds of $32,050.05. These amounts together with other diversions of funds caused the amount diverted to total $173,002.93. Defendant repaid $85,000 of the funds taken.
Defendant pled guilty to the offense. He asserted he managed CMAB for no compensation, and his only benefit was the ability to borrow money. He said that with the permission of the partners, he would take loans against CMAB and settle up at the end of the year, but when his children reached college, he began to borrow more than he could repay.
The plea agreement read in part:
The State will not object to defendant's admission to P.T.I. on recommendation of Program Director[1] on the following conditions 1) restitution of $173,002, less $85,000 which has been paid leaving a balance of $88,002.93; 2) payment to Div. of Tax, NJ $5314, and perform [sic] 300 hours of community service. Payment of restitution to be $250 per month for the first year and $500 per month thereafter. At the end of PTI probation period (if admitted) defendant will enter consent judgment with State for any amount still outstanding.
[Emphasis Added.]
Defendant applied for PTI, but on July 26, 1994, the Program Director rejected his application. The Director concluded that the
amount of the theft is too large, the time period over which this occurred was too long, the criminal practices too diverse, and the victims too aggrieved. The acts were purposeful and executed through careful planning, with the defendant realizing considerable financial gain. Although the applicant brings unique, if not remarkable, credentials, and certainly expresses an ostensible desire for diversion, his conduct through the lengthy course of crime, and afterwards, profiles an attitude less than ideal for diversionary supervision. It is recognized that some measure of punishment has already been served, in the form of shame and disgrace associated with negative publicity, forced retirement and temporary disbarment; however, it might also be said that the above punishment is insufficient in light of the offense and facts supporting this case. The fact that this matter has been plea bargained to a lower level, a level within P.T.I. range, does little to offset the seriousness of this offense when measured against the PTI standards. It is not sufficiently punitive to require Imbriani to pay back that which the Prosecutor *176 could prove he took, at a rate which may never reach goal. That would not stand as a deterrent to the individual or to the general public. The crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution and the harm done by abandoning criminal prosecution outweighs the benefits of supervisory treatment. Further, the needs and interests of the victims and society would not be met through diversion.
The Director found the following statutory guidelines applicable: N.J.S.A. 2C:43-12(e)(1), (2), (7), (8), (14) and (17).
Defendant appealed the Director's rejection of his application to the Assignment Judge of Mercer County. The Attorney General advised the judge as follows:
The State has independently evaluated this defendant's application to the program in light of the information developed by the PTI director as set forth in the director's PTI Rejection, the statements of the defendant and defendant's individual characteristics, the statements of the victims, all of the facts and circumstances of the case, and the letter brief on behalf of defendant contending that there are compelling reasons why he should be admitted to the program. The State concurs with the decision of the program director and does not consent to defendant's application to the PTI program. The reasons provided by the director are supported by the record and information provided to the director.
The judge ruled that the record did not establish that the Director abused his discretion. State v. Imbriani, 280 N.J. Super. 304, 306, 654 A.2d 1381 (Law Div. 1994). Defendant was sentenced to five years of probation with community service and restitution on March 8, 1995 and on June 12, 1995, a further judgment providing the terms of restitution to the victims was signed.
Defendant urges that the denial of his entry into PTI was arbitrary and capricious because: (1) he was treated differently because he was a Superior Court Judge, and when he is looked at as an individual he is amenable to correction; (2) there was too much emphasis placed on the victims' lack of consent, which was related to defendant's refusal to settle the civil suit sooner; (3) there was too much emphasis on defendant's inability to make restitution; (4) the nature of the crime did not lend itself to rejection; and (5) there was too much emphasis placed on the continuing nature of the crime. We reject these contentions.
PTI is a program whose purpose is to divert individuals with high rehabilitative prospects from the traditional channels of *177 the criminal process. State v. Bender, 80 N.J. 84, 88, 402 A.2d 217 (1979). Admission is based on the recommendation of the Program Director, with the consent of the prosecuting attorney. R. 3:28(b). Once the prosecutor has determined not to consent, the decision is afforded great deference, and the decision will not be overturned absent a showing of patent and gross abuse of discretion. State v. Leonardis, 73 N.J. 360, 381, 375 A.2d 607 (1977); State v. Kraft, 265 N.J. Super. 106, 112-13, 625 A.2d 579 (App.Div. 1993).
Ordinarily, an abuse of discretion will be manifest if the defendant can show that a prosecutorial veto (1) was not premised upon a consideration of all relevant factors; (2) was based upon a consideration of irrelevant or inappropriate factors, or (3) amounted to a clear error in judgment. State v. Bender, supra, 80 N.J. at 93, 402 A.2d 217. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying PTI. Ibid. A reviewing court must assume, absent evidence to the contrary, that the prosecutor's office has considered all relevant factors in reaching the PTI decision. State v. Nwobu, 139 N.J. 236, 247, 652 A.2d 1209 (1995). A reviewing court does not have the authority to substitute its own discretion for that of the prosecutor. Id. at 253, 652 A.2d 1209.
The Supreme Court has promulgated Guidelines for Operation of Pretrial Intervention in New Jersey to provide courts and prosecutors with criteria for making PTI decisions. Ibid. These guidelines are an addendum to R. 3:28. Guideline 1 of R. 3:28 identifies five purposes of PTI. They are: (a) to enable defendants to avoid ordinary prosecution by receiving early rehabilitative services expected to deter future criminal behavior; (b) to provide defendants who might be harmed by the imposition of criminal sanctions with an alternative to prosecution expected to deter criminal conduct; (c) to avoid burdensome prosecutions for "victimless" offenses; (d) to relieve overburdened criminal calendars so that resources can be expended on more serious criminal *178 matters; and (e) to deter future criminal behavior of PTI participants.
Guideline 3 of R. 3:28 lists a number of factors to be considered when assessing a PTI application, including those found in N.J.S.A. 2C:43-12(e). According to N.J.S.A. 2C:43-12(e), a Program Director and Prosecutor must consider: (1) the nature of the offense; (2) the facts of the case; (3) the motivation and age of the defendant; (4) the desire of the victim to forego prosecution; (5) the existence of personal problems and character traits which may be related to the applicant's crime; (6) the likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through participation in supervisory treatment; (7) the needs and interests of the victims and society; (8) the extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior; (9) the applicant's record of criminal and penal violations; (10) whether or not the crime is of an assaultive or violent nature; (11) whether or not prosecution would exacerbate the social problem that led to the criminal act; (12) the history of the use of physical violence against others; (13) any involvement of the applicant with organized crime; (14) whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution; (15) whether or not the applicant's involvement with other people in the crime charged is such that the interest of the State would be best served by processing his case through traditional criminal justice procedures; (16) whether or not the applicant's participation will adversely affect the prosecution of codefendants; and (17) whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.
Pursuant to Guideline 3(i), the nature of the offense must be considered and a PTI application "should generally be rejected" if the defendant's crime was: (1) part of organized criminal activity; or (2) part of a continuing criminal business or enterprise; or (3) *179 deliberately committed with violence or threat of violence against another person; or (4) a breach of the public trust. Guideline 3(i) also provides that persons charged with first- or second-degree crimes "should ordinarily not be considered for enrollment in a PTI program except on joint application by the defendant and the prosecutor."
Defendant perceives that he was not treated as an individual, but rather was placed in a separate category because he was a judge. He argues that as an individual, he has demonstrated "a lifetime of commitment to community service, dedication to excellence and unparalleled courage in the performance of his duties as a prosecutor and a Superior Court Judge." He notes that the money was diverted to educate his children, and urges that he is amenable to rehabilitation.
Consideration of the individual and all of the surrounding circumstances is a necessity with respect to the PTI program. State v. Lamphere, 159 N.J. Super. 562, 565, 388 A.2d 998 (App. Div. 1978); State v. Ridgway, 208 N.J. Super. 118, 123, 504 A.2d 1241 (Law Div. 1985).
[P]rosecutorial decisions in PTI matters are primarily individualistic in nature. In making any determination, the prosecutor must assess a particular applicant's "amenability to correction" and potential "responsiveness to rehabilitation"  assessments which are dependent upon such factors as a defendant's age, past criminal record, education, family ties, standing in the community, and employment performance. Also relevant are "subjective" evaluations, such as the prosecutor's assessment of a particular defendant's sincerity, the motive underlying the commission of the crime, and the degree of local public anxiety attaching to certain forms of misconduct.
[State v. Sutton, 80 N.J. 110, 119, 402 A.2d 230 (1979).]
The Director's rejection appropriately recognized that defendant borrowed money for his children's education. See N.J.S.A. 2C:43-12(e)(3); State v. Sutton, supra, 80 N.J. at 118, 402 A.2d 230. Defendant's motivation was but one factor to be considered. The cost of educating children is, however, a problem confronting many families with low or moderate incomes and cannot constitute justification for these crimes.
*180 The Director also recognized that defendant "spent a lifetime dedicated to the application of justice." He acknowledged defendant's service as a Superior Court Judge, a Deputy Attorney General and County Prosecutor. The Director found that "[t]hese considerations are not without merit and significance" but when weighed against the other factors, the "personal characteristics alone cannot support admission."
Defendant also argues that his rejection "was primarily based on his refusal to settle" the related civil suit, which resulted in the victims' refusal to give consent to his admission. Victim consent is an appropriate factor to consider under Guideline 3 and N.J.S.A. 2C:43-12(e)(4). However, as recognized in State v. Ridgway, supra, 208 N.J. Super. at 127, 504 A.2d 1241, the opposition of victims is likely to be based upon revenge, an undisclosed interest in the welfare of society, or some other inexplicable reason unrelated to PTI considerations. Victim consent is a single factor to be considered, and lack of consent does not require a PTI rejection, nor is it the weightiest of the criteria to be considered. Ibid; State v. Catlin, 215 N.J. Super. 471, 474, 521 A.2d 1385 (Law Div. 1987).
The Director noted that the victims objected to defendant's admission into PTI because they were "troubled by their loss" and because it would "not address their interest[s] nor serve justice." They claimed it was "anti-climactic," considering their experience and loss. The Director also observed that when the victims suspected financial problems with the corporation, defendant refused their request to turn over the corporate books, and that after one-and-a-half years of negotiations and substantial cost for investigation and litigation, the matter remained unsettled.
In summarizing the reasons for the denial, the Director noted that the amount of the theft was too large, the thefts occurred over too long a time, the criminal practices were too diverse, and the victims were too aggrieved. He also noted that the acts were purposeful and carefully planned, and resulted in considerable financial gain to defendant and loss to the victims. We are *181 convinced that when read as a whole, the Director's opinion makes it clear that the lack of victim-consent was only one of the several reasons for defendant's rejection, and that it was not given undue consideration.
In addition, defendant maintains that the rejection placed "undue, unreasonable and counter-productive reliance on Imbriani's inability to make restitution," while it should be considered a mitigating factor that after a lifetime of public service, he finds himself "steeped in debt." He also urges that he would not be in his "present predicament," nor would the victims be objecting to his entry into PTI, if he had the resources to pay restitution.
The Director recognized that defendant had few financial resources, and faced a limited prospect of procuring gainful employment, as his professional status was clearly endangered by the offense. He commented that the payment plan for restitution would not meet the interests of the victims because it was unlikely they would actually get paid. The Director concluded that it was "not sufficiently punitive to require Imbriani to pay back that which the Prosecutor could prove he took, at a rate which may never reach goal. That would not stand as a deterrent to the individual or to the general public."
Defendant contends that the need to deter defendant and others is not an appropriate factor to consider. We disagree as it is an appropriate factor under Guideline 1(b). Moreover, the agreement to make restitution can be made a condition of the prosecutor's consent. Guideline 3(k). In any event, looking at the entire basis for rejection, we conclude that the consideration of restitution and deterrence were only some of the many valid considerations that support defendant's rejection.
Defendant takes issue with the Director's finding that, "The crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution and the harm done by abandoning criminal prosecution outweighs the benefits of supervisory treatment." He argues there is "no reasonable *182 basis upon which to conclude that the nature of the third degree crime lends itself to rejection based solely on the said crime," and questions the public's need for prosecution of a "65-year old, heavily indebted pensioner."
The nature of the offense and the facts of the case must be given due consideration under N.J.S.A. 2C:43-12(e)(1) and (2) as incorporated into Guideline 3. Unquestionably, a large amount of money was misappropriated over a period of five years using various schemes. Defendant knowingly and continuously converted funds to which he was not entitled, as if they were his exclusively. As noted in the plea form quoted above, as a prerequisite to PTI defendant agreed to make restitution in an amount more than the maximum for the third degree crime to which he pled guilty. Giving proper consideration and weight to the nature of defendant's crime and the facts surrounding the misappropriations weighs heavily against his admission.
Defendant claims that undue emphasis was placed on the circumstances that defendant's crime appeared to be part of a continuing pattern of anti-social behavior. There are criminal activities which were likely to be construed as "continuing" by their very nature. However, the criminal activity here was not of such a nature that it had to continue except for defendant's intent and purpose to continue to offend. Defendant repeatedly committed these thefts over a period of five years, and profited well from his acts. Thus, under Guideline 3(i)(2), defendant's acts were part of an ongoing criminal activity.
We conclude that the record unequivocally demonstrates that there is no basis for a finding that the Program Director's decision was arbitrary or capricious. We, therefore, must affirm the rejection of defendant's PTI application.
As we mentioned, defendant also argues that the Assignment Judge erred when he considered whether defendant's actions were a breach of public trust, since neither the Program Director nor the Attorney General relied on that ground as a justification for the denial, and erred in determining that defendant's conduct *183 constituted a breach of public trust. In his opinion, Judge Samuel Lenox concluded that defendant's misappropriations were a breach of public trust. State v. Imbriani, 280 N.J. Super. at 307-314, 654 A.2d 1381; see Guideline 3(i)(4). However, that finding was not the only basis for the judge's decision. His decision was based upon a consideration of all the factors referenced by the Director. The other reasons for rejection were sufficient without a finding that the misconduct was a breach of the public trust. Therefore, we need not consider this ground to sustain the denial. See Schaad v. Ocean Grove Camp Meeting Ass'n of the United Methodist Church, 72 N.J. 237, 250, 370 A.2d 449 (1977).
We, therefore, see no purpose to be served in this case by entering the thicket of whether crimes committed by a Superior Court Judge outside of his official duties constitute a breach of the public trust. Even if we disagreed with Judge Lenox's determination on this factor, there would be no basis for reconsideration by the Director and Attorney General, as their decision to deny admission was not based on this factor.
Affirmed.
NOTES
[1] No argument is raised on appeal as to the propriety of the prosecutor here objecting to P.T.I. after the recommendation to deny was given by the Program Director.