156 N.J. Super. 272 (1978)
383 A.2d 781
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
ANTHONY MASUCCI, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 23, 1978.
*275 Ms. Joan Van Pelt, Assistant Prosecutor, argued the motion for plaintiff.
Mr. Bruce Fishelman argued the motion for defendant.
ALTERMAN, J.D.C., Temporarily Assigned.
This pretrial intervention motion challenges the Program Director's rejection of defendant's application and raises issues regarding the scope of the hearing required under R. 3:28.
In the course of investigating a theft from Clifton High School, the Clifton police obtained a warrant to search defendant's home. There they discovered items taken from the high school and a cache of marijuana. As a result, defendant was indicted for unlawful possession of a controlled dangerous substance, possession with intent to distribute a controlled dangerous substance, intent to steal and larceny.
*276 Defendant is 19 years old and lives with his parents. He was graduated from Clifton High School in June 1977. He was employed summers and on a part-time basis while attending high school and has been gainfully employed since he was graduated.
In April 1974 defendant was charged with juvenile delinquency (threat with a knife). Disposition of that complaint was withheld for two months and then dismissed. In the same month he was charged with four juvenile complaints alleging burglary and like offenses. For these complaints he was placed on temporary probation, disposition was withheld and defendant was ordered to continue treatment with a psychiatrist. Three months later, after a favorable report from the psychiatrist, probation was terminated and the complaints were dismissed.
Defendant began using marijuana at age 13. He used cocaine once, mescaline "a few times," but no longer uses any controlled dangerous substance. A urine test performed as part of the PTI application procedure was negative for controlled dangerous substances.
The Director concluded that defendant was not now in need of any drug treatment, that there was no causal connection between the offenses charged and defendant's rehabilitative need, and that defendant was involved in a continuing criminal activity or enterprise. The Director drew these conclusions from defendant's denial of any present use of marijuana, from the large amounts of that drug that were found in defendant's home, from defendant's knowledge of the cost of marijuana, from his admission that he sells it on the street for $25 a half-ounce, and from the negative urine test. Defendant's application for participation in the program was, therefore, denied.
Upon being advised of the rejection defendant filed the present motion and issued a subpoena to the PTI Director and the Passaic County Prosecutor, returnable on the day of the motion. The subpoena seeks: (1) to take the testimony *277 of the author of the PTI evaluation reports; (2) to inspect and photocopy reports of all statements made by defendant regarding profits from the sale of marijuana and statements indicating defendant's involvement in a "continuing criminal business or enterprise"; (3) to examine the probation department file concerning defendant's prior juvenile offense; (4) to examine confessions or admissions made by defendant to police authorities; (5) to examine the names of all persons interviewed by the author of the evaluation report and a summary of the information imparted by the persons interviewed. The prosecutor has moved to quash the subpoena.
In State v. White, 145 N.J. Super. 257 (Law Div. 1977), defendant sought to examine a probation officer who had denied his application for pretrial intervention, in order to disclose her mental processes and the values she attributed to the information at her disposal. The court held that such a hearing violated the teaching of State v. Leonardis, 71 N.J. 85 (1976), and the PTI Guidelines. The court there stated that its function was solely to "review the action of the director on the material submitted to the director by the applicant, balancing that action against the standard of arbitrariness and capriciousness." State v. White, supra at 261.
The challenge here, while it directly implicates the holding in White, is somewhat more extensive. The avowed purpose of the subpoena is to enable defendant to expose the alleged deficient manner in which the investigation of his background was conducted, to check the accuracy of information relied upon by the PTI personnel, and to demonstrate the arbitrariness of the Director's conclusion. While White delineated the scope of the hearing contemplated by R. 3:28, it was not there necessary for the court to comment upon the procedure to be employed when a defendant asserts that the evaluation report contains errors or omissions.
To be sure, errors may appear or omissions may be observed in a Director's report. The errors may relate either to the substantive offense charged or to defendant's background. *278 Alleged errors in reporting the circumstances relating to the substantive offense can be resolved only by trial and cannot be determined in the kind of hearing envisioned by R. 3:28.
Factual errors or omissions relating to defendant's background are usually undisputed and are readily demonstrated by his directing the trial judge's attention to materials he has submitted to the Director. An affidavit supporting defendant's contention is all that is necessary to raise the issue. If the judge deems the error or omission significant, he may remand the application to the Director for further consideration, and rehear the matter, if necessary, after it is reviewed by the Director. If the error or omission is not significant, the judge can proceed with the hearing.
The obligation is on a defendant, however, to place before the Director all of the information he believes should be considered. If he wants the Director to consider endorsements of his good character or other favorable information, it is defendant's responsibility to submit those materials during the application process. Defendant cannot place on the Director the burden of seeking out and interviewing all persons who may have some evidence of defendant's prior good conduct. Nor can the Director be expected to communicate with all persons whose names defendant may submit as character references, or suggest as sources of information. To require that extensive investigation would soon overload the Director's resources and cripple the entire program.
This is not to say that the Director may not, where he deems it appropriate, interview persons or resort to sources he believes will assist him in arriving at the correct conclusion. But he is not required to do so. The Director's investigation need be no more extensive than in his opinion is necessary to satisfy him that the information he has is sufficient to support his conclusion. The final determination is the court's. If the Director's investigation is deficient, *279 it will not sustain his conclusion and his arbitrariness will be readily discernible.
There can be no hard and fast rule by which to measure whether the Director's investigation is satisfactory. Each case must depend on its own circumstances. In some instances his interview with defendant and an examination of the materials submitted will suffice. In others an independent investigation of other sources or psychological or other examinations may be required. Again, this lies in the discretion of the Director who is charged with the responsibility of evaluating defendant's eligibility for participation in the program.
As a general rule, whatever the Director considers must be disclosed to the defendant. There are occasions, however, when the Director may obtain information adverse to defendant which will embarrass or endanger the source of that information if the source is disclosed. A protective procedure is available.
In Leonardis the court observed that where the prosecutor's furnishing reasons to defendant for withholding consent to enrollment, in the program would be unduly prejudicial to law enforcement, the prosecutor may apply for an in camera hearing. At this hearing the prosecutor would be required to present justification for his refusal to state reasons. The judge would determine whether the State's interests sufficiently outweighed the interest of defendant in obtaining reasons. Id. at 119. The same procedure may be followed by the Director.
If, in the Director's opinion, it is necessary to protect the confidentiality of a source of information, he may apply to the judge for an in camera hearing. The judge will then balance the competing interests and determine whether the information should be disclosed. See State v. Kunz, 55 N.J. 128, 144-145 (1969); R. 3:21-2, which outlines the procedure followed by the court in exscinding portions of a presentence report. In this assessment the court must also keep in mind that this is a program of comparative recent *280 development and that its acceptance as a valuable diversionary program may be seriously impaired if it were to become known that sources of confidentially imparted information were accessible to a defendant. In the present case it does not appear that the Director relied upon any information not included in the evaluation report.
The report, as written, adequately substantiates his conclusions. Defendant has a prior juvenile record composed, in part, of offenses similar to the offense with which he is now charged. His prior psychiatric treatments suggest, at least, an underlying psychological problem. Short-term psychiatric assistance and probation only three years ago did not affect a behavioral change.
Defendant admitted that he sells marijuana for profit. It is everywhere recognized that the street sale of marijuana is a part of a larger drug traffic which has its genesis outside of this country. His participation in this insidious venture is clear evidence of his involvement in a continuing criminal business or enterprise. This involvement imposes on defendant the burden of showing compelling reasons which would justify his admission to the PTI Program. Guideline 3(i)(2). Defendant has shown none.
Reports of statements made by defendant to the PTI Director or PTI personnel in the course of the application procedure need not be disclosed, but the Director is not prohibited from doing so. There is no need to burden the Director or his personnel with this additional task. First, defendant's statements are not available to the prosecutor, Guideline 5, and so defendant need not fear that they will be used against him in the event of a trial. Second, defendant's counsel is privileged to appear at any interview of defendant and learn, first hand, of any statements made by defendant. Third, any statements, confessions or admissions made by defendant to the prosecutor and relied upon by the Director are discoverable under R. 3:13-3.
The Director's failure to accede to such a request can in no way disadvantage defendant. It can aid him only insofar *281 as it may reveal a misrepresentation of his statement in the evaluation report. But, as previously observed, that error is readily demonstrable by a review of the Director's file when the error is asserted. To require the Director to copy and transmit all of defendant's statements as a matter of course imposes an unnecessary burden and serves no useful purpose.
Defendant is permitted to examine his own Juvenile Court files. R. 5:10-7(c). Again, if that record is misconstrued by the Director, the error may be demonstrated to the court. There is no necessity, and it is inappropriate in this proceeding, to subpoena the Director for the production of that record.
For these reasons the prosecutor's motion to quash the subpoena is granted and defendant's motion under R. 3:28 denied.