200 N.J. Super. 424 (1984)
491 A.2d 784
STATE OF NEW JERSEY, PLAINTIFF,
v.
KIM MARIE AND RAMONA PAYNE, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided August 27, 1984.
*426 Rocco Minervino, Asst. Pros. for plaintiff (Stephen Raymond, Burlington Cty. Pros.).
Ernest Bongiovanni for defendants (Timothy Hughes, Publ. Def.).
HAINES, A.J.S.C.
The defendants in this matter were passengers in an automobile stopped on the New Jersey Turnpike and found to be carrying 85 pounds of marijuana. The vehicle did not belong to them. They have been indicted for possession of C.D.S. and for possession with intent to distribute C.D.S. They claim innocence, saying they knew nothing about the marijuana. They applied for admission to the PTI Program and have had their application denied by the Director, a denial which the Prosecutor supports. The denial has been appealed to this court.
The principal objection to the admission of the Paynes into the program is the conclusion of the Director and the Prosecutor that they were involved in what is referred to in R. 3:28, Guideline 3(i), as "organized criminal activity" or "a continuing criminal business or enterprise." The guideline provides, that if such is the case, "the defendant's application should be generally rejected." It also provides that the applicant is to have an opportunity to present clear facts or materials demonstrating his (sic) amenability to the rehabilitative process, showing compelling reasons justifying his (sic) admission and establishing that a decision against enrollment would be arbitrary and unreasonable."
The Director and the Prosecutor take the position that the involvement of the Paynes in such criminal activity or business is to be inferred from the quantity of marijuana being transported. An amount so large could not have been possessed for personal use only; it was most likely intended for sale to others in small quantities once the defendants' destination was reached. Consequently, the criminal activity observed on the *427 Turnpike would have continued, involving profit-making activities with others and therefore meeting the language of Guideline 3(i). The defendants argue to the contrary, claiming that a series of separate undertakings occurring over a period of time is necessary in order to establish the activity or business to which the Guideline refers. A number of cases have addressed the issue but have not provided a definition of the terms in question. Typical cases are the following:
(1) In State v. Bender, 80 N.J. 84 (1979), the defendant had stolen cocaine from the drug store in which he worked as a pharmacist over a period of four years. However, he stole the cocaine for his own use only. The Court, holding that this was not a continuing criminal business, said that the course of conduct must involve commercial overtones, that it must be undertaken for the purpose of enriching the defendant in some material way.
(2) State v. Sutton, 80 N.J. 110 (1979). Four and one half years of welfare fraud was found to be a continuing criminal business.
(3) State v. Smith, 92 N.J. 143 (1983). The defendant was found to be engaged in an organized criminal activity since, if convicted, he would have been involved in gambling activities over a period of eight years.
(4) State v. Barrett, 157 N.J. Super. 96 (App.Div. 1978). Stock frauds were committed over a substantial period of time and were therefore found to be part of an organized and continuing criminal activity.
(5) State v. Markt, 156 N.J. Super. 486 (App.Div. 1978). The defendant engaged in a series of embezzlements and forgories over a period of several months. He was held to be engaged in an ongoing criminal activity.
(6) State v. Masucci, 156 N.J. Super. 272 (Law Div. 1978). The defendant admitted that he sold marijuana on the street for profit at $25 a half-ounce. A large amount of that drug was found in his home. He was held to be involved in a continuing criminal enterprise. The court said:
The defendant admitted that he sells marijuana for a profit. It is everywhere recognized that the street sale of marijuana is a part of a larger drug traffic which has its genesis outside of this country. His participation in this insidious venture is clear evidence of his involvement in a continuing criminal business or enterprise. [Id. at 280.]
No case has been found having facts similar to those before the court. Masucci comes close but must be distinguished since the facts of that case indicated that the defendant was engaged in an actual business, a series of drug sales over a period of time. The cases cited, in which "continuing criminal activity" was found to be present, involve a series of transactions which took place over a period of time. They lend support *428 to the defense position. That position is supported more significantly, however, by a logical analysis of the Director's position, coupled with a consideration of the basic purposes of PTI.
We start with the proposition that the Director and the Prosecutor are not required to prove "beyond a reasonable doubt" that facts adversely affecting admission are present before taking them into account in the decision-making process. It is sufficient that they have "a reasonable belief, grounded on reliable information, that certain aspects of the defendant's background will adversely affect the chances of rehabilitation should PTI enrollment be granted." State v. Maddocks, 80 N.J. 98, 107 (1979). In the present case, therefore, it is reasonable for them to assume factually that the defendants were engaged in the transportation of marijuana of a sufficient quantity to raise acceptable inferences of eventual sale to others in small quantities. Is this enough to constitute an ongoing criminal business?
As a matter of logic, it follows that the analysis provided by the Director and the Prosecutor would apply to many defendants whose criminal activities are unlikely to be considered "continuing criminal enterprises." For example:
(1) Every receiver of stolen goods is a likely seller of those goods to others.
(2) Every defendant charged with possession of a distributable quantity of any controlled, dangerous substance has the potential for distribution to others for profit.
(3) Every burglar who steals any personal property is likely to sell that property to others.
(4) Money received in a criminal transaction may be used to further other criminal activities.
(5) Every person having illegal possession of a gun, particularly in an automobile, may be delivering it to another for criminal purposes.
It would not be proper to reject every defendant charged with one of these crimes on the ground that a "continuing criminal enterprise" was involved. Even when a "continuing criminal enterprise" is clearly involved, it does not always present a difficult barrier to surmount. Defendants charged with welfare fraud, for example, are frequently and routinely admitted.
*429 Of equal importance in considering the issue, however, is the reason for the adoption of Guideline 3(i). It is grounded in the purposes of PTI. They are set forth in State v. Bender, supra, 80 N.J. at 88:
Pretrial Intervention (PTI) is a program whose chief aim is that of diverting individuals with high rehabilitative prospects from the traditional channels of the criminal process. Sponsored in conjunction with counseling and training services, the project provides alternatives to prosecution and conviction where the latter course would be "counterproductive, ineffective, or unwarranted." By relieving a certain class of criminal suspects of the time-consuming and often debilitating rigors of the criminal process as well as the stigma which attaches upon conviction of crime, PTI provides an avenue through which rehabilitation may more easily be accomplished. Another goal of the program is that of expediting the disposition of criminal matters in order that the case load burdens of our trial courts be alleviated....
State v. Leonardis, 71 N.J. 85 (1976), makes clear that defendants who have been accused of any crime are eligible for enrollment in PTI. Guideline 1, echoing N.J.S.A. 2C:43-12a, sets forth the purposes of PTI:
(a) To provide defendants with opportunities to avoid ordinary prosecution by receiving early rehabilitative services, when such services can reasonably be expected to deter future criminal behavior by the defendant, and when there is an apparent causal connection between the offense charged and the rehabilitative need, without which cause both the alleged offense and the need to prosecute might not have occurred.
(b) To provide an alternative to prosecution for defendants who might be harmed by the imposition of criminal sanctions as presently administered, when such an alternative can be expected to serve as sufficient sanction to deter criminal conduct.
(c) To provide a mechanism for permitting the least burdensome form of prosecution possible for defendants charged with "victimless" offenses.
(d) To assist in the relief of presently overburdened criminal calendars in order to focus expenditure of criminal justice resources on matters involving serious criminality and severe correctional problems.
(e) To deter future criminal or disorderly behavior by a defendant/participant in pretrial intervention.
These considerations, coupled with the logical analysis above, make it reasonably clear that the Guidelines intend a "continuing criminal enterprise" to consist of a course of conduct involving a series of transactions continuing over a period of time. It is a defendant's repetitive criminal activities which *430 provide a negative implication when rehabilitation is considered. That implication is not present when a single transaction is involved; even though, before it runs its course, it may provoke a chain of events.
In the present case, a single transaction is involved which may well be a link in a chain of further activities dealing with the disposition of the marijuana. It is not, however, the kind of continuing criminal activity which requires the defendants to face the high barrier erected by Guideline 3(i). There is no showing of any repetitive criminal activity. Guideline 3(i) should not be applied.
These conclusions do not mean that a single criminal act may not be of such consequence as to permit a prosecutorial decision against admission to PTI. The Supreme Court in Bender, supra, said: "a prosecutor's refusal to divert can, where appropriate, be based solely on the nature of the offense charged." Id. 80 N.J. at 89. I do not decide here whether the offense charged can or should support a prosecutorial denial of admission. That issue has not been raised. It is mentioned, however, to deny any suggestion that the definition of continuing criminal activity here adopted requires the admission into PTI of every defendant who has been involved in only a single undertaking.
It should also be noted that the question of the innocence of the defendants has been raised in the present case. Neither the Director nor the Prosecutor, in considering a PTI application, should consider the weight of the evidence of guilt or innocence. State v. Smith, supra, however held: "there may be circumstances in which a prosecutor or program director considers the evidence of guilt as part of the `facts of the case,' ... or as part of the `relevant circumstances' under Guideline 3 that help in evaluating an application for admission into pretrial intervention." Since evidence of guilt may be so considered, it necessarily follows that evidence of innocence may be given equal consideration in evaluating an application.
*431 In view of these conclusions, the matter is remanded to the director for reconsideration for the following reasons:
1. The Director's refusal was based primarily upon the conclusion that the defendants were involved in a continuing criminal activity. I have ruled otherwise. It cannot be determined with certainty whether the absence of this weighty concern would have produced a different initial result. The Director should be given an opportunity to address that question with this opinion in mind.
2. The effect of facts relating to guilt and innocence has been refined by this opinion. It cannot be determined how this information, if known at the beginning, would have affected the Director's reasoning. Again, he should be given the opportunity to review the application in the light of this opinion.