224 N.J. Super. 149 (1988)
539 A.2d 1254
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ARTHUR HOFFMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1988.
Decided March 31, 1988.
*150 Before Judges MICHELS, GAYNOR and ARNOLD M. STEIN.
Philip De Vencentes, argued the cause for appellant (Galantucci & Patuto, attorneys; Philip De Vencentes, of counsel and on the brief).
James R. Wronko, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; James R. Wronko, of counsel and on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
*151 Pursuant to leave granted, defendant, Arthur W. Hoffman, appeals from an order denying his motion for admission into the Passaic County Pretrial Intervention Program (PTI). We reverse.
Defendant was charged with official misconduct in violation of N.J.S.A. 2C:30-2 and criminal trespass in violation of N.J.S.A. 2C:18-3 a. The charges arose out of Hoffman's duties as an officer of the Special Civil Part of the Superior Court when he entered the dwelling of a defendant in a civil suit to recover property under a writ of replevin which he believed to be valid but, in fact, was unsigned.
The defendant had been a constable[1] in the Bergen County court system for approximately 18 years at the time of the incident giving rise to the indictment returned against him. His duties include the execution of eviction orders and writs of replevin. In accordance with his usual practice of acting upon papers left in his box at the courthouse, he did so in February 1984 with respect to a packet of papers found in his box relating to a replevin action involving furniture sold to one Elizabeth Whittingham, the named defendant. Without checking to see if the included writ of replevin was signed by a judge but noting that the summons was endorsed "bond filed in the amount of $5,000," indicating to him that the writ had issued, defendant proceeded to make arrangements for executing the writ. The furniture company was notified to have a truck at the location on the specified date and a locksmith was engaged. Upon arriving at the Whittingham apartment and finding no one at home and the building superintendent without a key, entry was gained by the removal of the lock. While this was being done a local police officer appeared and inquired as to *152 what was going on. According to defendant's grand jury testimony, the officer looked at the copy of the paperwork shown to him by defendant, "went back to his patrol car, radioed in, came back, said go ahead." The officer's testimony was that, after being shown the papers by defendant, "I asked where on those papers that it said we can break into the apartment and remove the furniture. He (the defendant) said `We do this anyway. It doesn't say here, but I can do it anyway.'" The items of furniture involved were then removed by the employees of the company.
Mrs. Whittingham had appeared on the scene while the repossession of the furniture was in progress. Knowing that the replevin action previously had been dismissed, she proceeded immediately to the courthouse to complain to the judge. There, notwithstanding her observations to the contrary, she was assured that her furniture could not be removed since the case had been dismissed and no court order had issued authorizing the repossession. Unsatisfied with this explanation, Mrs. Whittingham sought the advice of an attorney. An investigation of the incident undertaken by the judge satisfied him that defendant had acted without appropriate authority in that the writ of replevin included in the papers delivered to defendant had not been signed. Defendant was reprimanded for his negligence in executing an unsigned writ.
Although not so viewed by the attorney general, the investigative reports and testimony before the grand jury, while not crystal clear on the issue, can reasonably be understood as indicating that defendant was unaware at the time of the repossession that he was acting without the authority of a signed order. Officer Velez, one of the investigating officers, in explaining defendant's statements with respect to this issue, acknowledged that defendant's stated he was aware at the time of giving the statement that he did not have authority to act. Further that defendant "agreed that he had made a mistake, he had expected the order to be issued." That defendant had acted under the mistaken belief that the replevin had been *153 authorized also can be gleaned from defendant's testimony before the grand jury. He acknowledged that he did not examine the documents to determine that the replevin writ had been signed, but explained his understanding that the endorsement on the summons showing the filing of a bond meant that the writ had issued. Also, if he had noted the unsigned writ, he would not have proceeded with the execution. Defendant's subsequent statement to the PTI program director and the affidavit in support of his motion for admission to the program clearly indicate that he had acted without verifying the validity of the writ of replevin and that he would not have executed the order if he had known it was unsigned.
In concluding that Hoffman was a suitable candidate for PTI, the program director noted:
Mr. Hoffman has accepted his full responsibility for the commission of the alleged offenses and he has shown remorse for his actions. The fact that the defendant is a Process Server was a concern to the office. However, the information cited in the prosecutor's investigation points out that the defendant's actions were not the normal misconduct in office for the purpose of self-gain. Furthermore, a verbal reprimand and a one-day suspension were the only actions taken against the defendant. Consideration has been given to the fact that the defendant's version of the offense does not agree in all aspects with the information contained in the investigative material. Nevertheless, this office is of the opinion that the positive factors outweigh those of a negative nature and are therefore sufficient to override the guideline restriction to justify his enrollment.
* * * * * * * *
One of the purposes of Pre-trial Intervention is to provide an alternative to prosecution for defendants who might be harmed by the imposition of criminal sanctions as presently administered, when such an alternative can be expected to serve as sufficient sanction to deter criminal conduct (Guideline 1 b). Mr. Hoffman is a 41 year old first offender who does not appear to possess any severe correctional problems. He has been a Process Server (Constable) for 18 years and, if convicted, he will be terminated from that position. Also, it appears that Mr. Hoffman has maintained a blameless record during his tenure and he is considered a valued employee. This program believes that participation in this rehabilitative program will serve to thwart him from any future criminality.
As the prosecuting officer, the attorney general objected to the diversion of defendant, observing that he had abused his *154 position as an officer of the court and had "breached the trust placed in him by the people of Bergen County." Enrollment of defendant in the program "would deprecate the seriousness of the offense ... and not serve as sufficient deterrent to this individual or others similarly disposed to such activities." It was also noted that the "contrary versions (of the incident) related by defendant, indicate that he would not be amenable to rehabilitation and is simply trying to avoid the consequences of his actions."
In denying defendant's motion for enrollment in the PTI program notwithstanding the objection of the attorney general, the trial court found that such objection did not constitute an egregious injustice and unfairness or a patent and gross abuse of discretion, reasoning:
Considering the fact in this case that the Attorney General must determine what cases must be prosecuted in the public interest for the protection of society and also for purposes of deterrence and considering the fact that the Attorney General has determined that this case involved an alleged breach of the public trust where admission into a PTI program will depreciate the seriousness of the defendant's crime and considering the fact where the defendant is charged with a second degree crime and considering the fact also that the Deputy Attorney General is a member of the executive branch of government and it is the Attorney General that must exercise discretion and determine what cases must be prosecuted in the interest of the public.
The purposes of PTI include the deterrence of future criminal behavior by affording the defendant appropriate rehabilitative services; the avoidance of harmful criminal sanctions by providing an alternative to prosecution which can be expected to serve as a sufficient sanction and deterrent; and the relief of overburdened criminal calendars "in order to focus expenditure of criminal justice resources on matters involving serious criminality and severe correctional problems." R. 3:28, Guideline 1; State v. DeMarco, 107 N.J. 562, 567 (1987).
The pretrial intervention program is an alternative procedure to the traditional process of prosecuting criminal defendants. It is intended to augment the criminal justice system where prosecution would be counterproductive, ineffective or unwarranted. Sponsored in conjunction with various counseling and training services, PTI serves a rehabilitative purpose and ameliorates the stigma which is imposed on criminal defendants. While PTI may incidentally *155 provide prosecutors with another means to dispose of cases and the opportunity to reduce the backlog of litigated cases which currently plagues the courts, it relieves a selected class of criminal suspects of the time-consuming and often debilitating rigors of the criminal process. [State v. Leonardis, 71 N.J. 85, 89-90 (Leonardis I.)]
While the decision to divert a defendant from criminal prosecution implicates both judicial and prosecutorial functions, State v. DeMarco, 107 N.J. at 566, State v. Leonardis, 71 N.J. 85, 108-109 (Leonardis I), enhanced deference is given to prosecutorial decisions to admit or deny a defendant to PTI. State v. Daglish, 86 N.J. 503, 513-14 n. 1 (1981). Generally "a defendant must `clearly and convincingly establish that the prosecutor's refusal to sanction admission into [a PTI] program was based on a patent and gross abuse of his discretion' before a court could suspend criminal proceedings under R. 3:28 without prosecutorial consent." [Emphasis in original.] State v. Daglish, 86 N.J. at 509 (1981), quoting from State v. Leonardis, 73 N.J. 360, 382 (1977) (Leonardis II). Such abuse of discretion arises upon a showing that the rejection is not premised upon a consideration of all relevant factors, is based upon a consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment. It must further be shown that the prosecutorial error will clearly subvert the goals underlying pretrial intervention. State v. Bender, 80 N.J. 84, 93 (1979). A court's review of a prosecutor's denial of consent normally is limited to the reasons given by the prosecution for his action and, in the absence of evidence to the contrary, it is presumed that the prosecutor considered all relevant factors in rendering the decision. Id. at 94
There can be no dispute with the attorney general's determination that defendant's offense fell within the ambit of Guideline 3(i)(4) as a breach of the public trust and thus generally to result in rejection from PTI. However, exclusionary criteria are to be utilized as guidelines only and not as mandatory standards. Leonardis I, 71 N.J. at 111. Defendant's employment as an officer of the court thus does not *156 necessarily preclude his admission into PTI, but warrants consideration as one factor in judging him as a whole person. State v. DeMarco, 107 N.J. at 569 It is evident that the attorney general's rejection of the director's recommendation was based upon an unwarranted conception of defendant's exercise of his court-related function. While defendant improperly acted upon an unauthorized repossession, we find adequate factual support for defendant's position that his action was based upon the mistaken belief that the authorizing documents were in order. Although, technically, defendant's conduct involved a breach of the public trust, the circumstances do not justify a determination that admission of the defendant into PTI would deprecate the seriousness of the offense or be an insufficient deterrent to defendant and others. We view the decision of the attorney general in this regard as either not being premised upon a consideration of all relevant factors or a clear error in judgment, thus constituting a patent and gross abuse of the prosecutorial discretion.
Moreover, a defendant's admission to a PTI program must be measured according to his or her amenability to correction and responsiveness to rehabilitation as well as by the nature of the offense involved. Leonardis I, 71 N.J. at 122; N.J.S.A. 2C:43-12b. See also State v. Burger, 222 N.J. Super. 336 (App.Div. 1988). We are in complete accord with the program director's conclusion that defendant has presented compelling reasons which demonstrate his amenability to rehabilitation. His acknowledgment of responsibility for the offenses, his demonstration of remorse for his actions, his steadfast assertion that he had no intent to violate the law and his prior blameless record, all clearly justify the director's determination that "participation in this rehabilitative program will serve to thwart him from any future criminality." We are unpersuaded that defendant's asserted inconsistent versions of the incident required a contrary conclusion. However, assuming the claimed inconsistencies, we find them not to be of such import *157 as to overcome the cited factors supportive of defendant's amenability to rehabilitation.
Considering the circumstances giving rise to defendant's offenses and the likelihood of his responsiveness to rehabilitation, precluding him from this alternative diversionary program and subjecting him to prosecution and conviction "would be counterproductive, ineffective or unwarranted," Leonardis I, 71 N.J. at 89 and clearly subversive of the underlying goals of PTI. Participation in the program would expose defendant to appropriate rehabilitative services while imposing sanctions which would serve as a sufficient deterrent. Moreover, the criminal justice resources would thus be preserved for matters involving serious criminality and severe correctional problems.
For the reasons stated, we cannot agree with the trial judge's conclusions that the attorney general's objection to defendant's diversion pursuant to R. 3:28 did not constitute an egregious injustice and unfairness or a patent and gross abuse of discretion. The order dated October 14, 1987 denying defendant's motion for admission to the Passaic County Pretrial Intervention program is therefore reversed.
NOTES
[1] The position is now referred to as an Officer of the Special Civil Part, Law Division, Superior Court per order of the Supreme Court effective December 31, 1983.