236 N.J. Super. 272 (1989)
565 A.2d 720
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LORRAINE MICKENS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 10, 1989.
Decided October 23, 1989.
*273 Before Judges PRESSLER, LONG and GRUCCIO.
Alfred A. Slocum, Public Defender, attorney for appellant (Mark H. Friedman, Assistant Deputy Public Defender, of counsel and on the letter brief).
Ronald S. Fava, Passaic County Prosecutor, attorney for respondent (Steven E. Braun, Senior Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is an appeal from an order of the Superior Court, Law Division, affirming the rejection by the Passaic County Prosecutor of defendant Lorraine Mickens' application for admission to the pretrial intervention program (PTI). Concluding that the rejection constituted a patent and gross abuse of discretion, we reverse the order, vacate the ensuing judgment of conviction, and direct defendant's admission into the program.
Defendant, then 30 years old and the single parent of three children ages 10, 9 and 7, was indicted in March 1987 on two counts of theft by deception, contrary to N.J.S.A. 2C:20-4. Both arose out of her receipt of public financial assistance during periods when she was employed. The first count charged her with improper receipt of a total of $11,051 in categorical welfare payments during the four-month period from July 1981 to November 1981, the six-month period from December 1981 to May 1982, the four-month period from October 1982 to February 1983, and the thirteen-month period from February 1984 to March 1985. The second count charged her *274 with receiving a total of $4,679 in food stamps during the same periods.
Following the return of the indictment, defendant applied for PTI and was recommended for acceptance by the Program Director. The prosecutor disagreed with the recommendation, advising defendant of her rejection pursuant to PTI Guideline 3(i). That decision was affirmed by the trial judge, albeit reluctantly. Thereafter, pursuant to a plea negotiation which preserved defendant's right to appeal from the PTI rejection, she pleaded guilty to the first count and signed a civil judgment requiring her to make full restitution, a condition she had accepted as part of her PTI application. She was then sentenced to a probationary term.
According to this record, it appears that defendant, a high school graduate, had managed to complete a secretarial course in June 1981 and, despite her obligation to care for and raise her three children, she also managed to obtain secretarial employment during the periods referred to in the indictment at an hourly wage of between $4 and $5. She explained to the Program Director that she did not report this income to the welfare authorities, although she knew she was supposed to, because she still had "trouble making ends meet" and was otherwise unable to move herself and her children from what she described as "undesirable housing conditions." She was, in fact, during part of this time living with her children at the Alexander Hamilton Hotel, a welfare facility well-qualified for the characterization of "undesirable." She also lived for part of the time in an apartment in her mother's house, an arrangement she was forced to abandon when her mother sold the house and the new owner raised the rent beyond her capacity to pay. She finally succeeded in obtaining an apartment in a public housing project where she apparently still resides with her children.
Some months after her last improper receipt of welfare, defendant obtained a secretarial position with Merrill Lynch. *275 After some thirteen months there, she had done so well that her employer selected her for attendance at its stockbroker school. At about that time, the indictment was returned. Her superiors explained to her that in order to attend the school and pursue a stockbroker career, she would be required to be bonded, a requirement she would be unable to meet if convicted of a crime. As we understand the record, Merrill Lynch agreed to defer these career advancement plans until disposition of the criminal charge, retaining her in her secretarial capacity in the meanwhile. It is, however, clear that she was advised that if convicted that employment too would have to be terminated.
Finally, the record shows that defendant has no prior criminal record, no juvenile record, no history of any substance abuse, no history of any psychological problem and, as noted by the Program Director, "is sincerely sorry for what she has done." In seeking admission to PTI, she was required to state to the Program Director "why she felt she would be a suitable candidate for enrollment." Her reported response was that
she has never been in any trouble before; she has already caused enough embarrassment for herself and her family; she is the sole support of her three dependent children; she feels that she is now in a career position and that a conviction could cause her to lose her current employment and adversely affect future employment opportunities; she will never become involved in criminal activities in the future and she is willing to make full restitution to the Passaic County Board of Social Services and will sign a Civil Judgment in favor of the Welfare Board.
Despite all of the foregoing and the consequent favorable recommendation of the Program Director,[1] the prosecutor rejected *276 defendant's application. The statement of specific reasons, required by State v. Atley, 157 N.J. Super. 157 (App.Div. 1978), relied on Guideline 3(i)(2), which provides that if the crime is "part of a continuing criminal business or enterprise," the applicant ordinarily should not be accepted unless he is able to present "facts or materials demonstrating his amenability to the rehabilitative process, showing compelling reasons justifying his admission and establishing that a decision against enrollment would be arbitrary and unreasonable." In applying this Guideline, the prosecutor, after mischaracterizing defendant's work history between 1981 and 1985 as one of having been "rather steadily employed,"[2] concluded in full that
Since these allegations constitute a continuing involvement in criminal activity over the course of several years in an amount of almost $15,000, we must consider whether there were extenuating circumstances, or any particular hardship that might explain why the defendant sought to supplement her income through the receipt of welfare and food stamp monies.
In reviewing the Pre-trial Intervention Evaluation Report, it is noted that the defendant claims she was having "trouble making ends meet." This is hardly a situation which rises to the level of a compelling reason justifying the defendant's admission to the program. In fact, the defendant is well-skilled, and could, and did obtain employment as early as 1981. This is simply and succinctly a case of a defendant seeking to "pad" her income by illegal means.
There has been no showing of compelling reasons justifying this defendant's admission in to the Pre-Trial Intervention Program. Indeed, it is important for the people who are truly deserving and have legitimate need of welfare and for those people who are in a position to work and indeed do so without illegal supplementation from the public dole, that this defendant not be diverted to the PTI Program, but instead be processed through traditional criminal justice *277 system procedures. For the foregoing reasons, the State opposes this defendant's entry into Pre-Trial Intervention.
The prosecutor's evaluation of defendant is further illuminated during the course of her colloquy with the Law Division judge. She explained that her office ordinarily consents to PTI admission when a defendant is charged with welfare fraud only
where there is some indication of the home situation or the factors that lead that defendant to commit welfare fraud and usually then consist of a health problem of perhaps one of the children or the defendant's own health or some other situation which the defendant feels has driven him or her to commit welfare fraud.
These circumstances did not exist here in the prosecutor's judgment because defendant, in her view, is "well educated" and was simply seeking "to pad her income." The prosecutor also expressed what appears to be an entirely unfounded skepticism that defendant would lose her job if not admitted, going so far as to suggest that as "Your Honor well knows there are attorneys in this State with criminal convictions who continue to practice."[3] Her final word on that subject was that
I can't believe that this defendant would only be able to get a job for either four or five dollars an hour simply because she has a criminal conviction.
If she has secretarial skills, she's going to be able to make a living.
The Supreme Court has most recently addressed PTI in State v. DeMarco, 107 N.J. 562 (1987). Reiterating its well-understood purposes of diverting eligible defendants out of the criminal process to their own advantage, society's and that of the criminal justice system, and again emphasizing that individualized evaluation is at the heart of the program, the Court further instructed as to the manner in which appellate courts must apply the review standard of patent and gross abuse of prosecutorial discretion. Thus, DeMarco makes clear that the appellate court must distinguish between prosecutorial abuse consisting of the failure to consider all relevant factors specific *278 to the individual candidate and prosecutorial abuse represented by a judgment reached after a full consideration. In the first instance, it is the obligation of the reviewing court to remand to the prosecutor for reconsideration. In the second instance, the reviewing court is free to conclude that the abuse "arises from a clear error of judgment," and, if it does so, it "may order that a defendant be admitted into the program." 107 N.J. at 567. We are convinced that this is a case of a clear error of judgment.
Assuming that Guideline 3(i)(2) applies, we are nevertheless persuaded that this defendant met the standards of "amenability to the rehabilitative process" and "compelling reasons justifying his admission" so overwhelmingly that the denial cannot be viewed as other than a patent and gross abuse of discretion. Significantly, the prosecutor had not one positive word to say about the rehabilitation standard, which is so fundamental a part of PTI that Guideline 1(a) speaks, in addressing the purposes of PTI, to "an apparent causal connection between the offense charged and the rehabilitative need, without which cause both the alleged offense and the need to prosecute might not have occurred."
Defendant had a rehabilitative need. She had a need to be rehabilitated from poverty, from the burdens of single parenthood, from the employment limitations of a high school education obtained in an urban ghetto, and from a housing market whose inadequacy for people like her constitutes a social, economic and human crisis of national proportions. See, e.g., Franklin v. New Jersey Dept. of Human Services, 111 N.J. 1 (1988); Maticka v. City of Atlantic City, 216 N.J. Super. 434 (App.Div. 1987). Defendant has made significant progress in rehabilitating herself. We obviously do not condone her self-help resort to the crime of welfare fraud, and we recognize that welfare fraud is a serious social and fiscal problem. Nor need we undertake to determine which is the greater social evil, welfare fraud or the conditions which have made welfare a survival necessity for so many. The point only is that under *279 the circumstances here, defendant's crime is forgivable, and not to forgive it by her PTI admission makes a mockery of the rehabilitative purpose of PTI. Defendant will not only be deprived of the benefit of her fraudulently obtained welfare, but of the benefit of her own legitimate efforts. And so will her children. Her rehabilitation will be stopped dead in its tracks. She will lose her job, be eligible again for welfare, and not be able to make any restitution  a net loss for her, her family, and society, with no offsetting gain we can perceive. If this defendant is not eligible for PTI, who is?
We are also troubled by what we view as the prosecutor's misreading of the compelling-reasons standard of Guideline 3(i). She apparently construes this as not meaning only compelling reasons for admission but also as compelling reasons for having committed the crime. In her judgment, a sick child is a sufficiently extenuating circumstance to qualify for compassion. Moving three children out of a degenerate welfare hotel is not. Thus, to the extent extenuating circumstances are relevant, we disagree with the prosecutorial line-drawing. More to the point, however, is our conviction that compelling reasons for committing the crime is a consideration beyond Guideline 3(i). We do not believe that a thief must be Jean Valjean in order to qualify. PTI is premised on the recognition that the applicant has done something wrong, has made a mistake. The applicant need not have been driven to that conduct. He must, however, acknowledge his error, be sincerely remorseful, be willing to make amends for it outside the criminal justice system, and have the capacity to do so. See, e.g., State v. Hoffman, 224 N.J. Super. 149, 156 (App.Div. 1988); State v. Ridgway, 208 N.J. Super. 118, 123-124 (Law Div. 1985).
We have considered the question of whether we should remand to the prosecutor for reconsideration of the rehabilitation factor, as we did in State v. Burger, 222 N.J. Super. 336 (App.Div. 1988), also a Passaic County welfare fraud PTI case in which we concluded that the prosecutor, in rejecting the application, failed to adequately weigh that concern. We decline to *280 do so since we are of the view that the prosecutor here did consider that factor and simply concluded that it was of inadequate weight to overcome the seriousness of the crime. It is precisely in the making of that evaluation that the "clear error of judgment" lay.
We emphasize our general reluctance to interfere with a prosecutor's constitutional autonomy and the exercise of his criminal justice responsibilities. We also recognize the degree of constraint imposed on our right to do so by the patent and gross abuse standard. This, however, is a case in which our own judicial obligation requires us to act.
The conviction appealed from is vacated, the order denying pretrial intervention is reversed, and the prosecutor is ordered to admit defendant to the program.
NOTES
[1] The reasons for his recommendation given by the Program Director were as follows:

1) The defendant is a first offender.
2) The defendant has expressed a willingness to make restitution and she has agreed to sign both an agreement to repay the Board of Social Services and a Civil Judgment in favor of the Welfare Board.
3) The defendant is the sole support of three dependent children.
4) The defendant accepts total responsibility for her involvement in the fraud and appears to be sincerely remorseful for having involved herself in the criminal activities.
5) The defendant no longer receives welfare assistance and is gainfully employed at the present time. The imposition of criminal sanctions, as presently administered, could have an adverse effect on the defendant's current employment, future advancement or other employment opportunities.
6) Participation in PTI should prove to be a sufficient sanction to deter any future criminal activities.
[2] As noted, according to the indictment itself, over the course of this five-year period, defendant improperly received welfare payments for 27 months over the course of four separate occasions.
[3] We note that R. 1:20-6(b) requires the automatic suspension of any lawyer found guilty of committing a serious crime therein as defined, whether or not yet sentenced. See, e.g., Matter of McCann, 110 N.J. 496 (1988); Matter of Goldberg, 109 N.J. 163 (1988).