915 A.2d 561 (2007)
390 N.J. Super. 302
STATE of New Jersey, Plaintiff-Respondent,
v.
Charles A. WATKINS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 2006.
Decided February 5, 2007.
*562 Yvonne Smith Segars, Public Defender, attorney for appellant (Abby P. Schwartz, Assistant Deputy Public Defender, of counsel and on the brief).
Stuart Rabner, Attorney General, attorney for respondent (Leslie-Ann M. Justus, Deputy Attorney General, of counsel and on the brief).
Before Judges KESTIN, WEISSBARD and PAYNE.
The opinion of the court was delivered by
WEISSBARD, J.A.D.
Defendant, Charles Watkins, appeals from an order of February 22, 2006, denying his appeal of the State's rejection of his application for entry into the Pre-Trial Intervention (PTI) program, R. 3:28, following his indictment for third-degree theft by deception, N.J.S.A. 2C:20-4 (count one), and fourth-degree unsworn falsification to authorities, N.J.S.A. 2C:28-3a (count two). Following the denial of his appeal, defendant entered a guilty plea to count one and, pursuant to a plea agreement, was sentenced to a three-year probationary term with a condition of restitution in the amount of $7619.78. If defendant completed the restitution before three years, his probation would be terminated *563 after two years. Appropriate penalties and assessments were also imposed.
On appeal, defendant argues that the State's rejection of his PTI application, in the face of a recommendation for admission by the Criminal Division Manager, constituted a gross abuse of discretion. We reverse and remand for reconsideration of defendant's application in light of the views expressed in this opinion.
The facts leading to defendant's indictment were set forth in the State's rejection letter of April 19, 2004:
These charges are based on misrepresentations that Mr. Watkins made to the New Jersey Department of Labor (DOL) in order to receive unemployment benefits to which he was not entitled. Mr. Watkins began receiving unemployment benefits in May 1998 when he was temporarily laid-off from Trenton Psychiatric Hospital. Mr. Watkins' unemployment benefits were extended in 1999 under the "Additional Benefits During Training Program" (ABT) whereby certain "eligible" claimants may obtain an extension of unemployment insurance benefits while pursing [sic] education and job training skills to enhance their employment opportunities. Mr. Watkins pursued a degree at the community college while receiving UI benefits under the ABT program but knowingly failed to report his re-employment with the Trenton Psychiatric Hospital to the Department of Labor.
Between January 23, 1999 through May 22, 1999, Mr. Watkins cashed nine unemployment checks, all of which required him to certify that he was unemployed, collecting $5,670 in unemployment benefits. Based upon his earnings at Trenton Psychiatric Hospital during this time period, Mr. Watkins was not entitled to any of this money.
Apparently efforts were made to resolve the matter civilly but to no avail. The indictment followed.
In denying defendant's appeal, the judge wrote as follows:
During the hearings on the appeal, the State initially asserted three bases for PTI denial: the fact that the defendant was a state employee and the policy of the Attorney General's Office was to hold state employees to a higher standard of conduct and deny them PTI entry; the fact that the offense occurred over a five-month period of time and involved nine separate unemployment checks; and the defendant's prior criminal behavior, which involved a 1990 disorderly persons conviction for receiving stolen property. At a subsequent hearing conducted on November 19, 2004, the State withdrew the defendant's employment with the State as a basis for rejection and relied upon the two other aforementioned bases. After considering those bases for rejection, the Court finds that the State's denial was not arbitrary or capricious and, therefore, denies the defendant's appeal of his PTI rejection.
At the outset, we note our limited scope of review. Due to the close relationship between the PTI Program and the prosecutor's charging authority, "courts allow prosecutors wide latitude in deciding whom to divert into the PTI Program and whom to prosecute through a traditional trial. The deference has been categorized as `enhanced' or `extra' in nature." State v. Negran, 178 N.J. 73, 82, 835 A.2d 301 (2003) (quoting State v. Baynes, 148 N.J. 434, 443-44, 690 A.2d 594 (1997)).
Thus, a prosecutor's decision rejecting a PTI application "rarely will be overturned." State v. Kraft, 265 N.J.Super. 106, 111, 625 A.2d 579 (App.Div.1993) (quoting State v. Leonardis (II), 73 N.J. *564 360, 380 n. 10, 375 A.2d 607 (1977)). We review "to check only the most egregious examples of injustice and unfairness." Ibid. (quoting State v. DeMarco, 107 N.J. 562, 566, 527 A.2d 417 (1987)); see also Negran, supra, 178 N.J. at 82, 835 A.2d 301.
To overturn a prosecutor's rejection, a defendant must clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion. Negran, supra, 178 N.J. at 82, 835 A.2d 301; State v. Nwobu, 139 N.J. 236, 246, 652 A.2d 1209 (1995); State v. Motley, 369 N.J.Super. 314, 321, 848 A.2d 875 (App.Div.2004). A patent and gross abuse of discretion has been defined as "more than just an abuse of discretion as traditionally conceived; it is a prosecutorial decision that `has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.'" State v. Wallace, 146 N.J. 576, 582-83, 684 A.2d 1355 (1996) (quoting State v. Ridgway, 208 N.J.Super. 118, 130, 504 A.2d 1241 (Law Div.1985) (citations omitted)). Defendant must show that the prosecutor's decision "`(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.'" Negran, supra, 178 N.J. at 83, 835 A.2d 301 (quoting State v. Bender, 80 N.J. 84, 94, 402 A.2d 217 (1979)). Because we conclude that the Prosecutor, and the judge, misinterpreted a critical factor, we remand for reconsideration.
The bases for defendant's rejection were also set forth in the prosecutor's rejection letter of April 19, 2004. Immediately following the statement of facts quoted above, the Deputy Attorney General (DAG) stated:
The facts of this case indicate that the fraud continued from January to May 1999, a five-month period of time, involving nine separate instances where Mr. Watkins lied about his employment status in order to cash unemployment checks. Accordingly it is the State's position that the defendant's crime falls within the ambit of Guideline 3(i)(2) of Rule 3:28 as a continuing criminal enterprise justifying his rejection from PTI. Mr. Watkins committed a substantial fraud over a lengthy period of time. The circumstances surrounding this case coupled with his status as a public employee clearly demonstrates that he is not amenable to a rehabilitative process.
Finally, although there are no explicit per se rules excluding offenders from PTI eligibility, the statute provides that "supervisory treatment should ordinarily be limited to persons who have not previously been convicted of any criminal [offense]. . . ." N.J.S.A. 2C:43-12a. According to NCIC, Charles Watkins has a 1990 municipal court conviction for receiving stolen property. Obviously, Mr. Watkins [sic] prior experience with the criminal justice system has not had a significant deterrent effect on him and further indicating that he is not a suitable candidate for PTI.
Thus, a key element in the rejection determination was the DAG's conclusion that defendant's crime fell within Guideline 3(i)(2) as a "continuing criminal enterprise." Such a conclusion "generally constitutes sufficient justification for rejection from pretrial intervention." State v. Imbriani, 280 N.J.Super. 304, 317, 654 A.2d 1381 (Law Div.1994), aff'd, 291 N.J.Super. 171, 677 A.2d 211 (App.Div.1996). The Guideline reads, in pertinent part, as follows:
(i) Assessment of the Nature of the Offense:

*565 Any defendant charged with crime is eligible for enrollment in a PTI program, but the nature of the offense is a factor to be considered in reviewing the application. If the crime was (1) part of organized criminal activity; or (2) part of a continuing criminal business or enterprise; or (3) deliberately committed with violence or threat of violence against another person; or (4) a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime, the defendant's application should generally be rejected.
While Guideline 3(i)(2) does not define its terms, the concept has been addressed in a number of cases, not always consistently.
In a comprehensive discussion in State v. Marie, 200 N.J.Super. 424, 491 A.2d 784 (Law Div.1984), Judge Haines concluded, after examining numerous cases, that a "continuing criminal enterprise" consists "of a course of conduct involving a series of transactions continuing over a period of time." Id. at 429, 491 A.2d 784. "It is a defendant's repetitive criminal activities which provide a negative implication when rehabilitation is considered." Id. at 429-30, 491 A.2d 784. In Marie, the defendant was arrested based on the discovery of eighty-five pounds of marijuana in a vehicle in which he was a passenger. Id. at 426, 491 A.2d 784. He was thereafter indicted for possession and possession with intent to distribute narcotics. Ibid. While recognizing that defendant's activity, although a single transaction, "may well be a link in a chain of further activities dealing with the disposition of marijuana," the judge concluded that it was "not, however, the kind of continuing criminal activity which requires the defendant to face the high barrier created by Guideline 3(i). There is no showing of any repetitive criminal activity. Guideline 3(i) should not be applied." Id. at 430, 491 A.2d 784.
In the course of his opinion, Judge Haines catalogued the cases that had, to that date, addressed Guideline 3(i), beginning with State v. Bender, 80 N.J. 84, 402 A.2d 217 (1979), in which defendant, a licensed pharmacist, diverted narcotics from his employer's inventory over a four-year period to feed his cocaine addiction. The Court stated as follows:
We agree with the State that in order for a series of criminal acts to constitute a continuing enterprise, it is not necessary that a "profit" be realized in the sense that the fruits of those crimes be sold to third persons and hence be converted into cash. Nonetheless, the defendant's course of conduct must ordinarily involve commercial overtones. That is, the crimes perpetrated must be undertaken for the purpose of enriching defendant in some material way.
As such, the crimes here engaged in by defendant cannot be characterized as a continuing criminal business or enterprise in the sense of being undertaken for commercial purposes. Although defendant systematically diverted cocaine from his employer's stocks over a four-year period, his course of conduct was not motivated by a desire to, nor did it, add to his worldly possessions or in any other manner result in financial gain. Rather, his crimes were merely undertaken in order to satisfy his need for drugs.
Support for this construction of "continuing criminal business or enterprise" can be gleaned from the language of the Guidelines themselves. One of the main purposes of PTI is "[t]o provide a mechanism for permitting the least burdensome form of prosecution possible for defendants charged with `victimless' offenses." Guideline 1(c). Clearly, this *566 purpose would be entirely frustrated were persons who unlawfully consume controlled dangerous substances over a prolonged time span to be deemed engaged in a continuing criminal enterprise and hence "generally" to be rejected pursuant to Guideline 3(i)(2). Although in the present case defendant's crime was not truly "victimless"inasmuch as his cocaine diversions harmed his employer as well as himselfthe underlying rationale of Guideline 1(c) is nevertheless applicable. Defendant's later thefts, being precipitated in large part by his drug dependence, cannot be characterized as part of a continuing business or enterprise.
[Id. at 95-96, 402 A.2d 217.]
In a companion case, State v. Sutton, 80 N.J. 110, 402 A.2d 230 (1979), the defendant had obtained public assistance funds and food stamps over a four and one-half year period, while failing to report that she had obtained work as a part-time school bus driver. If the earnings had been reported, defendant's welfare benefits would have been reduced. Id. at 114, 402 A.2d 230. The Court held that defendant's PTI application was properly rejected because her conduct constituted a continuing criminal enterprise. Id. at 118, 402 A.2d 230. The Court stated:
Defendant did not merely fail to report one or a few sporadic accessions to her income. Rather, over a four and one half year period, she regularly received compensation deriving from her employment as a part-time school bus driver. She was thus guilty of a series of "fail[ures] to disclose a material fact which it [was her] duty to reveal," and these non-disclosures allowed her to "obtain * * * from [an] agency of the county * * * money, property, [and] other thing[s] of value * * *." N.J.S.A. 2A:111-2.
[Ibid.]
In State v. Masucci, 156 N.J.Super. 272, 383 A.2d 781 (Law Div.1978), the defendant admitted that he sold marijuana "on the street," for profit. Id. at 276, 280, 383 A.2d 781. The judge upheld defendant's PTI rejection, stating:
It is everywhere recognized that the street sale of marijuana is part of a larger drug traffic which has its genesis outside of this country. His participation in this insidious venture is clear evidence of his involvement in a continuing criminal business or enterprise.
[Ibid.]
In State v. Barrett, 157 N.J.Super. 96, 384 A.2d 558 (App.Div.1978), defendant engaged in a scheme over a period of three years to sell unregistered securities to the public through a company of which he was President. Id. at 98-99, 384 A.2d 558. We reversed a Law Division order that had overturned the Attorney General's rejection of defendant's PTI application, on the basis that the activity fell within Guidelines 3(i)(1) and (2). Id. at 102, 384 A.2d 558. Defendant was "part of an organized and continuous criminal activity." Id. at 103, 384 A.2d 558.
Several of the other cases cited in Marie did not touch on Guideline 3(i)(2). Thus, State v. Markt, 156 N.J.Super. 486, 384 A.2d 162 (App.Div.1978), turned on defendant, treasurer of the Joint Free Public Library of Morristown and Morris Township, having engaged in a breach of public trust by virtue of a series of six embezzlements and forgeries over a six-month period, id. at 489, 493, 384 A.2d 162, in violation of Guideline 3(i)(4). Id. at 492, 384 A.2d 162. And, in State v. Smith, 92 N.J. 143, 455 A.2d 1117 (1983), defendant's premises were allegedly being used for a large scale gambling operation which, *567 based on records seized, had been ongoing for about eight years. Id. at 144, 455 A.2d 1117. The Court upheld the prosecutor's rejection of defendant's PTI appli cation on the ground that his conduct was "part of organized criminal activity" in violation of Guideline 3(i)(1). Id. at 145-47, 455 A.2d 1117.
Subsequent to Marie, we confronted a single mother of three young children who wrongfully received public assistance benefits during four periods totaling twenty-seven months over a four-year time span. State v. Mickens, 236 N.J.Super. 272, 273, 565 A.2d 720 (App.Div.1989). Defendant was rejected for PTI enrollment based on Guideline 3(i). Id. at 273, 565 A.2d 720. We assumed that the Guideline applied to her conduct, but nevertheless concluded that her reasons for committing the offense and her prospects for rehabilitation compelled her admission to the program. Id. at 278-80, 565 A.2d 720. Significantly, we made no mention of State v. Sutton, supra, a remarkably similar case with an opposite outcome. Indeed, the court in Mickens, id. at 279, 565 A.2d 720, made only passing reference to State v. Burger, 222 N.J.Super. 336, 536 A.2d 1295 (App. Div.1988), in which we concluded that obtaining welfare benefits and food stamps over a six-year period while continuously and falselycertifying to no outside income, id. at 339, 536 A.2d 1295, "fell within the ambit of Guideline 3(i)(2) as a continuing criminal enterprise." Id. at 341, 536 A.2d 1295 (citing Sutton, supra, 80 N.J. at 117-18, 402 A.2d 230).[1] Finally, in Imbriani, supra, 280 N.J.Super. at 316, 318, 654 A.2d 1381, defendant, a Superior Court judge, diverted over $173,000 to his own use over a period of five years from a private real estate partnership, using a variety of fraudulent schemes. It was in that context that the Law Division found defendant's offense to constitute a continuing criminal enterprise, applying the definition of that term in State v. Marie, quoted above. Id. at 317-18, 654 A.2d 1381. We agreed with that conclusion, noting that "the criminal activity here was not of such a nature that it had to continue except for defendant's intent and purpose to continue to offend." Imbriani, supra, 291 N.J.Super. at 182, 677 A.2d 211.
With this background, we return to the present case. To repeat, defendant received $5670 in unemployment benefits in the form of nine checks over a four-month period; to continue receiving benefits, defendant was required to certify bi-weekly that he was unemployed. Defendant admitted that he knew of his obligation to report his renewed employment to the DOL. The question is whether his conduct constituted a continuing criminal enterprise, as that term is used in Guideline 3(i)(2). While one could parse the phrase into its components, i.e., "continuing," "criminal" and "enterprise," we believe a proper analysis requires the words to be read as a unit. Thus, while defendant's actions were certainly criminal, did they amount to a "continuing . . . enterprise"?
As noted earlier, Bender, supra, 80 N.J. at 95, 402 A.2d 217, held that the "course of conduct must ordinarily involve commercial overtones," although it is not necessary that there be third parties, such as buyers of illegally obtained goods, involved. *568 Yet, the Court went on to clarify its statement by observing that the crimes "must be undertaken for the purpose of enriching the defendant in some material way." Ibid. If that statement were taken literally, defendant would clearly fit within the Guideline since he was enriched in a material way by receiving the checks to which he was not entitled. However, we believe that the Court's statement cannot be understood without reference to its factual context, particularly the length of time involvedfour years. In that case, of course, the Court ultimately held that the Guideline did not apply since defendant's thefts were for the sole purpose of supporting his addiction, and not for pecuniary gain. In Sutton, supra, the defendant's conduct, which was clearly undertaken for personal financial gain, took place over a four and one-half year period. 80 N.J. at 118, 402 A.2d 230. Other cases discussed earlier have likewise involved criminality over an extended period of time. Barrett, supra, (three years); Burger, supra, (six years); Imbriani, supra, (five years).
The dictionary defines "enterprise" as inter alia, an undertaking of "great scope, complication or risk," a "business organization," or a "systematic and industrious activity." Webster's II New College Dictionary 375 (1995).[2] The reference to a "business organization" is significant because, in seeking the meaning to be accorded the term "enterprise" in Guideline 3(i)(2), we also note that the entire phrase speaks of a continuing "business or enterprise" (emphasis added). See State v. Sisler, 177 N.J. 199, 206-07, 827 A.2d 274 (2003) (quoting Jersey Central Power & Light Co. v. State Bd. of Tax Appeals, 131 N.J.L. 565, 567, 37 A.2d 111 (E. & A.1944)) ("The coupling of words denotes an intention that they shall be understood in the same general sense"). "Continuing" is defined, insofar as relevant here, as existing "over an extended period." Webster's Dictionary, supra, at 244.
Whatever may be the limits of a continuing enterprise, defendant's actions did not fit that concept as it has been developed and applied by the decisions referenced earlier. Whether his conduct could be viewed as an enterprise, because of its systematic nature, need not be resolved since it was not a "continuing" enterprise, due to the relatively brief length of time it persisted. A series of unlawful acts intended to profit the criminal do not translate into a "business" or "enterprise" simply because they took place over a number of months. Such was the case here.
Our conclusion does not mean that defendant is automatically entitled to PTI admission. The nature of his offense may still be considered. The fact that it is not a continuing criminal business or enterprise only means that it does not bring the offense within those that "should generally be rejected." In addition, defendant did have a prior, albeit old, brush with the law, as reflected in a disorderly persons conviction. See Negran, supra, 178 N.J. at 84, 835 A.2d 301 (quoting State v. Brooks, 175 N.J. 215, 227, 814 A.2d 1051 (2002)) (reference in PTI guidelines to "anti-social behaviour," permits consideration of "not only serious criminal acts, but less serious conduct including disorderly persons offenses. . . . ")
We remand for the purpose of having the Prosecutor reconsider defendant's application without considering Guideline 3(i)(2). If a new determination is unfavorable *569 to defendant, he will have his right to appeal to the Law Division.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Other cases cited by defendant in which PTI rejections have been overturned do not deal with the continuing criminal enterprise Guideline. State v. DeMarco, supra; State v. Munos, 305 N.J.Super. 9, 701 A.2d 920 (App. Div.), certif. denied, 152 N.J. 186, 704 A.2d 16 (1997); State v. Fitzsimmons, 291 N.J.Super. 375, 677 A.2d 767 (App.Div.), certif. denied, 146 N.J. 568, 683 A.2d 1163 (1996); State v. Hoffman, 224 N.J.Super. 149, 539 A.2d 1254 (App.Div.1988).
[2] When seeking the "ordinary and well-understood meanings" of words, courts frequently look to the dictionary definitions. Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 384, 658 A.2d 1230 (1995).